OPINION OF THE COURT
John V. Vaughn, J.
An indictment was filed in this court charging the defen *588 dant, Matthew Solomon, with the crime of murder in the second degree. Defendant was thereafter arraigned on January 19, 1988.
Subsequently, on January 25, 1988, the court received an application by Newsday to conduct still photography throughout the proceedings. Thereafter, on January 28, 1988, the court received applications for videotaping and live television coverage from WLIG-TV, News Channel 55, News 12 Long Island, and on February 4, 1988, from WNBC-TV News. According to the rules, the court has consolidated these applications (22 NYCRR 131.3 [c]).
The applications are made pursuant to an experimental program designed to comport with the legislative findings that an enhanced public understanding of the judicial system is important in maintaining a high level of public confidence in the judiciary, and with the legislative concern that cameras in the courts be compatible with the fair administration of justice. As such, this program is an exception to the public policy contained in the Civil Rights Law which prohibits the televising or broadcasting of any proceedings in which the testimony of a witness is obtained by subpoena or other compulsory process (Civil Rights Law § 52).
Upon receipt of the applications, the court notified the parties to the action of the nature of the request (22 NYCRR 131.3 [b]). At the conference, neither the relatives of the victim nor the District Attorney opposed the applications. However, the defendant did submit objections to the application. Through his attorney, defendant forcefully argued, among other things, that in this murder case, which has purportedly received extensive pretrial publicity, the additional audio-visual coverage requested will not only violate the privacy of potential witnesses, but will also unduly influence and prejudice prospective jurors, and, thus, deprive him of a fair trial.
The rules provide that the consent of the parties, prospective witnesses, victims or other participants in a judicial proceeding, is not required for approval of an application for such coverage (22 NYCRR 131.4 [b]) and coverage shall not be limited by such objections except upon a finding of legal cause by the presiding Trial Judge (Judiciary Law § 218 [5]). However, upon objection of any party, the court must state the basis for its determination (22 NYCRR 131.4 [d]).
In determining the application for coverage, the rules pro *589 vide that the presiding Trial Judge must consider all relevant factors including, but not limited to: (1) the type of case involved; (2) whether the coverage would cause harm to any participant; (3) whether the coverage would interfere with the fair administration of justice, the advancement of a fair trial, or the rights of the parties; (4) whether the coverage would interfere with any law enforcement activity; (5) whether the proceedings would involve lewd or scandalous matters; (6) the objections of any of the parties, witnesses, victims, or other participants in the proceedings; (7) the physical structure of the courtroom and likelihood that any equipment required can be installed and operated without disturbance in the courthouse; and (8) the extent to which the coverage would be barred by law in the judicial proceeding of which coverage is sought (22 NYCRR 131.4 [c]). The rules further provide that nothing in them is intended to restrict any preexisting lawful right of the news media to appear at and to report on judicial proceedings (22 NYCRR 131.1 [c]). In New York, the rights of the press to report on judicial proceedings is extensive (Judiciary Law § 4; see, Matter of Associated Press v Bell, 70 NY2d 32; Richmond Newspapers v Virginia, 448 US 555).
In support of his objections, the defendant has submitted eight photocopies of newspaper articles appearing in four leading newspapers, as well as a videotape of "Crimes of Passion”, Geraldo Rivera’s premier show of January 25, 1988, 9:00 a.m., channel 4. From these it does not appear that this case will deal with any explicit sexual testimony or graphic depiction of nudity. Rather, the media interest appears to stem from the nature of the act, i.e., the murder of a newlywed on Christmas Eve, and the progress of the investigation. Neither the District Attorney nor the victim’s family has opposed. the application for audio-visual coverage. On the other hand, the defendant argues that he has been prejudiced by this publicity and relies substantially upon the holding in Sheppard v Maxwell (384 US 333).
The Sheppard case (supra) was concerned with the combined effects of pretrial publicity and the disruptive activities of the press in the course of the trial. Significantly, there was substantially more pretrial publicity in Sheppard than we have in this case. Moreover, the procedures provided for in the present rules on audio-visual coverage of judicial proceedings will prevent the abuses that occurred during the Sheppard trial.
The pretrial publicity and its effects present a different *590 problem. In this area, the press is relatively free to report any news it obtains. Nevertheless, as indicated in Sheppard (supra), there are sanctions which the court may impose upon the parties, attorneys, and to a more limited extent, upon the press, restricting the effects of any prejudicial pretrial publicity (see, Sheppard v Maxwell, supra, at 358-362; Code of Professional Responsibility EC 7-33; DR 7-107). In addition, a continuation or even a change of venue may be sought in a proper situation.
However, there is no basis at this time for a conclusion that the pretrial publicity has been prejudicial, or that the available remedies are, or will be, inadequate.
Accordingly, the applications for audio-visual coverage is granted. A pretrial conference will be scheduled to review the restrictions to be imposed (Judiciary Law § 218 [4] [b]; 22 NYCRR 131.6).