In the Matter of NEW YORK TIMES COMPANY, Petitioner, v THOMAS A. DEMAKOS, as Justice of the Supreme Court, Queens County, Respondent.

Second Department, May 23, 1988

### APPEARANCES OF COUNSEL

*Deborah R. Linfield* for petitioner.

*Robert Abrams, Attorney-General (Howard L. Zwickel* and *Judith Kaufman* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

The petitioner, The New York Times Company (hereinafter the Times), instituted the instant CPLR article 78 proceeding against the respondent, a Justice of the Supreme Court, Queens County, seeking to prohibit him from conducting plea proceedings pursuant to Queens County indictment number 890/87 in a closed session from which the public and press are excluded and to compel the respondent to disclose the transcript of any prior plea proceedings involving the defendant Harry Buonocore which were conducted outside the presence of the press and public. We find that the respondent's action in precluding the public and press from plea proceedings in this case is improper and accordingly, the petition herein is granted.

## I

This proceeding arises out of the highly publicized case involving the attack upon three black men by a group of white youths in the Howard Beach section of Queens County in December 1986. One black man was struck and killed by a passing vehicle when he was chased onto the Belt Parkway by his attackers. Previously, three youths involved in the attack were convicted, *inter alia*, of manslaughter in the second degree. The trial of seven remaining defendants accused of participating in the attack was scheduled to begin on May 23, 1988. One of the youths is charged, *inter alia*, with the crime of attempted murder in the second degree and the remaining six individuals, including Harry Buonocore and Salvatore DeSimone are charged, *inter alia*, with riot in the first degree.

Sometime during May 18, 1988, the Times was informed that two of the named defendants, Buonocore and DeSimone, were negotiating with the prosecution and the respondent to plead guilty and that the pleas would formally be entered on May 19 and 20, 1988. The respondent issued a "gag order" prohibiting any of the involved parties or their attorneys from commenting to the press on the pending proceedings and the Times, despite several attempts, was unable to obtain any information regarding the impending guilty pleas. The Times, during the afternoon of May 18, 1988, and the following morning, contacted the respondent's chambers several times requesting an opportunity to gain access to the plea proceedings or to be heard on the issue of the closure of the proceedings. The respondent failed to respond to those requests and refused to hold a hearing. Sometime during May 19, 1988, the defendant Buonocore allegedly pleaded guilty to the charges against him under Queens County indictment number 890/87 in the respondent's chambers with the public and the press excluded. A transcript of those plea proceedings was allegedly taken and sealed.

On the afternoon of May 19, 1988, the Times sought, by order to show cause, to temporarily restrain the respondent from conducting further secret plea proceedings and to direct the respondent to disclose the transcript of the plea proceedings involving the defendant Buonocore. Upon being informed of this application, the respondent finally agreed to hold a hearing on the application of the Times.

The following morning, May 20, 1988, prior to the allegedly scheduled plea proceedings involving the defendant DeSimone, the respondent provided the Times with an opportunity to be heard on the issue of the closure of the plea proceedings. In addition to seeking access to the plea proceedings of the defendant DeSimone, the Times also sought disclosure of the plea hearing transcript involving the defendant Buonocore. Neither the defense lawyers nor the prosecution were in attendance at this hearing. The prosecution has represented to this court that it takes no position on the Times' application. The papers presented to this court indicate that at least one of the defense attorneys has voiced strong opposition to the closed proceedings, and no defendant opposed the application of the Times.

At the conclusion of the Times' argument, the respondent denied the application. The respondent determined that if the

plea proceedings were open to the press and public and/or the plea transcript was unsealed at that time, the respondent could not insure that the remaining defendants' rights to a fair and impartial jury would be protected due to extensive media publicity. The respondent also summarily determined that possible alternatives to closure of the plea proceedings, such as an extensive and careful voir dire, a change of venue or an adjournment of the impending trials, were not viable. This determination consisted of conclusory statements lacking any factual basis whatsoever.

Immediately after the respondent's ruling, the Times commenced this proceeding. The proceedings under Queens County indictment number 890/87 from which the public and the press are excluded have been stayed pending this court's determination on the Times' petition.

## II

The courts have consistently held that the right of the public and press to attend court proceedings, civil and criminal, is guaranteed by the Federal and State Constitutions (US Const 1st Amend; NY Const, art I, § 8; *see, Globe Newspaper Co. v Superior Ct.,* 457 US 596; *Richmond Newspapers v Virginia,* 448 US 555; *Gannett Co. v DePasquale,* 443 US 368; *Matter of Capital Newspapers v Moynihan,* 71 NY2d 263; *Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430; *Matter of Herald Co. v Weisenberg,* 89 AD2d 224, *affd* 59 NY2d 378; *see also,* Judiciary Law § 4 ["The sittings of every court within this state shall be public, and every citizen may freely attend the same"]). In criminal cases, this right of access has been extended not only to the trial itself, but also to pretrial hearings *(see, Press-Enterprise Co. v Superior Ct. of Cal.,* 478 US 1, 106 S Ct 2735; *Waller v Georgia,* 467 US 39; *Matter of Associated Press v Bell,* 70 NY2d 32), voir dire proceedings *(see, Press-Enterprise Co. v Superior Ct. of Cal.,* 464 US 501), and plea proceedings *(see, Matter of Hearst Corp. v Clyne,* 50 NY2d 707). In cases dealing with the claim of constitutional right to access to criminal proceedings, the courts have recognized that open-court proceedings serve several purposes. "First, 'contemporaneous review in the forum of public opinion' *(Matter of Oliver,* 333 US 257, 270) serves to protect the accused from 'secret inquisitional techniques' and unjust persecution by public officials and 'goes far toward insuring him the fair trial to which he is entitled' *(People v*

*Jelke,* 308 NY 56, 62) * * * The public also has an interest in seeing that there is justice for the accuser—the police and prosecutors who must enforce the law, and the victims of crime who suffer when the law is not enforced with vigor and impartiality. And when justice has been done, public awareness 'serve[s] to instill a sense of public trust in our judicial process' *(People v Hinton,* 31 NY2d 71, 73) by assuring the innocent and impressing the guilty with the power of the rule of law. Justice must not only be done; it must be perceived as being done" *(Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430, 437, *supra).*

In *Press-Enterprise Co. v Superior Ct. of Cal.* (464 US 501, 508, *supra,* quoting from *Richmond Newspapers v Virginia,* 448 US 555, 570, *supra),* the Supreme Court also noted that the open trial "has what is sometimes described as a 'community therapeutic value' ". The court further explained: "Criminal acts, especially violent crimes, often provoke public concern, even outrage and hostility; this in turn generates a community urge to retaliate and desire to have justice done * * * When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions. Proceedings held in secret would deny this outlet and frustrate the broad public interest; by contrast, public proceedings vindicate the concerns of the victims and the community in knowing that offenders are being brought to account for their criminal conduct by jurors fairly and openly selected" *(Press-Enterprise Co. v Superior Ct. of Cal.,* 464 US 501, 508-509, *supra).*

This is not to say that a criminal proceeding may never be closed to the public or press. It has been recognized that the right to an open trial may give way in certain instances to other rights or interests, such as an accused's right to a fair trial or the government's interest in avoiding the disclosure of sensitive information. However, closed proceedings must be rare and may only be held for cause shown which clearly and compellingly outweighs the value of openness *(see, Waller v Georgia,* 467 US 39, 45, *supra; Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430, 438, *supra).* The Supreme Court set forth the applicable rule in *Press-Enterprise Co. v Superior Ct. of Cal.* (464 US 501, 510, *supra):* "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.

The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered" *(see also, Globe Newspaper Co. v Superior Ct.,* 457 US 596, 606-607, *supra; Matter of Westchester Rockland Newspapers v Leggett, supra,* at 442).

Prior to deciding whether closure of court proceedings is warranted, the Trial Judge must provide the interested parties with notice and an adequate opportunity to be heard on the issue *(see, Matter of Westchester Rockland Newspapers v Leggett, supra,* at 442). Moreover, a court's decision to close a criminal proceeding to the public and the press may not be based upon conclusory assertions but must be supported by specific factual findings *(see, Press-Enterprise Co. v Superior Ct. of Cal.,* 478 US 1, 10–15, *supra).*

## III

In the instant proceeding, it is significant to note that the respondent refused the Times an opportunity to be heard on the issue of closure of the plea proceedings prior to the alleged taking of the defendant Buonocore's guilty plea on May 19, 1988. In fact, the respondent failed to make any specific findings at that time to support his determination that closure of the proceedings was necessary. In this respect, the respondent, who acted secretly and apparently *sua sponte,* failed to comply with the procedures required for closure prescribed in *Matter of Westchester Rockland Newspapers v Leggett* (48 NY2d 430, 442, *supra)* and *Press-Enterprise Co. v Superior Ct. of Cal.* (464 US 501, 510, *supra) (see, Matter of Johnson Newspaper Corp. v Parker,* 101 AD2d 1027, *appeal dismissed* 63 NY2d 673; *In re Washington Post Co.,* 807 F2d 383).

Moreover, we conclude that the respondent's findings, made after the belated hearing conducted on May 20, 1988, that the closed proceedings and sealed plea transcript were necessary to protect the remaining defendants' rights to a fair trial, have not been demonstrated in the record and therefore are insufficient to outweigh the constitutional right of access of the public and the press. A similar argument was addressed and ultimately rejected by the Court of Appeals in *Matter of Associated Press v Bell* (70 NY2d 32, *supra)* which involved a trial court ruling directing the closure of the *Huntley* hearing in the widely publicized murder trial of Robert Chambers. The Court of Appeals stated: "[H]ypothetical risk of prejudice or taint cannot justify categorical denial of public access to

suppression hearings because, as a general matter, the important interests of *both* the accused and the public can be accommodated. In individual cases, through careful voir dire a court can identify any potential jurors whose prior knowledge of the case would deter them from rendering an impartial verdict, and thus protect the right of the accused to a fair trial *(Press-Enterprise [Co. v Superior Ct. of Cal.], 478 US 15, supra)"* *(Matter of Associated Press v Bell, supra, at 38)*.

It is also significant that during the hearing on the Times' application, the respondent conceded that despite the extensive publicity which preceded the first Howard Beach trial, he was able to impanel a fair and impartial jury after conducting a thorough voir dire process. Surely, the potentially prejudicial effect which the public disclosure of the instant plea proceedings would have upon the jury selection process in the impending trials is no greater than that which occurred from the pretrial publicity in the earlier trial. The publicity and public attention which this case has generated from the date of the incident to present day has been extensive and has included recurring accounts of the witnesses' observations and their trial testimony given in the preceding trial. It is difficult to discern how public access to the instant plea proceedings would cause such prejudice to the remaining defendants' right to a fair and impartial jury as to warrant the categorical denial of the constitutional right of access of the public and the press. This is particularly so where it is apparent that at least one of the attorneys for a defendant to be tried voiced opposition to the closed sessions because of a concern of the prejudice to his client of "partial" and speculative media reports of the closed proceedings.

In view of the foregoing, we conclude that the presumption of openness of criminal proceedings was not overcome in this case. The respondent's articulated purpose for closing the plea proceedings to the public and the press does not justify the actions taken in this case. Absent a showing of compelling circumstances, this court cannot countenance secret court proceedings to which the public and the press have a constitutional right of access. The right of freedom of the press guaranteed under the First Amendment and the public's right to be informed should not be hostages to the subjective whims of a Trial Judge, no matter how well intentioned he or she might be. Accordingly, the petition is granted.

MOLLEN, P. J., MANGANO, RUBIN and SULLIVAN, JJ., concur.

Ordered that the cross motion is denied, without costs or disbursements; and it is further,

Adjudged that the petition is granted, on the law, without costs or disbursements, and the respondent is prohibited from conducting any further plea proceedings in a criminal matter under Queens County indictment number 890/87 from which the public and the press are excluded and the respondent is directed to release forthwith the transcript of any plea proceedings involving the defendant Harry Buonocore under that indictment.