**JOHNSON NEWSPAPER CORPORATION d/b/a The Batavia News, Plaintiff–Appellee,**

v.

**The Hon. Glenn R. MORTON, Judge of the County Court of the County of Genesee, Defendant–Appellant.**

**No. 1328, Docket 88–7283.**

United States Court of Appeals, Second Circuit.

Argued Aug. 18, 1988.

Decided Nov. 29, 1988.

---

O. Peter Sherwood, Sol. Gen., State of N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen., William E. Storrs, Asst. Atty. Gen., Albany, N.Y., of counsel), for defendant-appellant.

S. Paul Battaglia, Syracuse, N.Y. (Jonathan B. Fellows, Bond, Schoeneck & King, Syracuse, N.Y., of counsel), for plaintiff-appellee.

Before WINTER and MINER, Circuit Judges, BILLINGS, District Judge.*

MINER, Circuit Judge:

Defendant-appellant The Hon. Glenn R. Morton ("Judge Morton"), Judge of the County Court of the County of Genesee, appeals from a summary judgment entered in the United States District Court for the Western District of New York (Elfvin, J.) declaring that his closure of a pre-trial suppression hearing was unconstitutional and allowing plaintiff to recover against him its reasonable costs and counsel fees. The action was commenced by plaintiff-appellee Johnson Newspaper Corporation d/b/a The Batavia Daily News ("Batavia News") following the issuance by Judge Morton of an order that prevented its news reporters from attending a suppression hearing in a criminal case pending in the Genesee County Court. Because we find that declaratory relief is inappropriate under the circumstances, we reverse and direct the entry of judgment in favor of Judge Morton.

---

* Hon. Franklin S. Billings, Jr., U.S. District Judge, District of Vermont, sitting by designa-

## BACKGROUND

This action had its genesis in proceedings in the County Court of Genesee County in a criminal action entitled "The People of the State of New York v. David R. Ferringer." Ferringer was indicted and arraigned on September 26, 1984 for the crimes of assault in the third degree, murder in the second degree (four counts), attempted robbery in the first degree, rape in the first degree, sexual abuse in the first degree, and criminal possession of stolen property in the third degree. There seems to be little doubt that the brutal rape/murder with which Ferringer was charged was a matter of intense public interest and concern in the small upstate New York community in which it occurred. Immediately following his arraignment, therefore, Ferringer applied to Judge Morton by order to show cause for a blanket closure of all evidentiary hearings and other proceedings preliminary to trial; for the sealing of any notices of intent to offer in evidence any statements made by him to the police; and for such other measures as might be necessary to protect him from the effects of prejudicial pre-trial publicity.

After hearing argument of Ferringer's application on September 28, 1984, Judge Morton denied blanket closure as premature and as unsupported by the required showing of necessity. The denial was without prejudice to a reapplication for the closure of specific hearings or proceedings to be scheduled in the future. Any notices of intention to offer statements to be filed by the district attorney were ordered sealed pending further direction of the court or expiration of the time allowed for motions to suppress. Decision was reserved on the balance of the issues presented. Present when Judge Morton orally announced these determinations on September 28 were the District Attorney of Genesee County, Ferringer's attorney, and an attorney representing Batavia News. All had participated in the oral argument.

tion.

Judge Morton filed a written decision on December 12, 1984 addressing the remainder of the relief sought in the application. He wrote that the issue to be resolved "concerns the protective measures, if any, this court should undertake to discharge its affirmative duty to minimize the possibility of prejudicial pre-trial publicity." Although Judge Morton found that "two regional papers have elected to disclose potentially prejudicial material," he also found that "coverage has subsided together with any expressions of public hostility or demonstrations." He concluded that no further measures to assure Ferringer a fair trial were then necessary, other than a direction that the New York State Police "not release or disclose without the approval of this court the performance or results of any test conducted herein or anticipated testimony of any prospective witness in respect thereto."

On January 25, 1985, Ferringer renewed his closure motion. At that time, after the District Attorney had served a notice of intent to offer statements in evidence and had responded to discovery requests, it appeared that a hearing would be scheduled on Ferringer's motion to suppress specific oral and written statements as well as an item of physical evidence. The closure motion was argued on January 29, 1985 by an assistant district attorney of Genesee County, by the attorney then representing Ferringer and by an attorney from the law firm representing Batavia News. Judge Morton issued his decision and order granting the closure motion on January 31, 1985. The action at bar was spawned by that determination.

In granting closure, Judge Morton found that Ferringer had made "the required showing" of "a strong likelihood that evidence relevant and admissible at the pre-trial hearing would prejudice his right to a fair trial if it were prematurely disclosed." Although Judge Morton recognized "that both the press and the public have some qualified right" to attend pre-trial proceedings in criminal cases, he opined that "the extent thereof or the showing of necessity to justify a closure has not been clearly defined." He rejected the suggestion of Batavia News that an expanded voir dire and a change of venue be considered as alternatives to closure, for the reason that "[n]o authority has been submitted which would reflect in any way that such is the remedy of choice ... where only a qualified right is involved." Judge Morton prohibited release of transcripts of the proceedings until "completion of the trial or such other time as the defendant is no longer in jeopardy."

The action at bar was commenced by the filing of a complaint on September 19, 1985, but it was not until October 2, 1985 that the last of the charges against Ferringer was disposed of by a negotiated plea. The criminal proceedings were concluded finally by the imposition of a sentence on October 21, 1985, at which time copies of the suppression hearing transcripts were made available to the public. In this action, brought pursuant to the provisions of 42 U.S.C. § 1983 for violations of its rights under the first and fourteenth amendments, Batavia News sought judgment: (1) declaring the closure determination violative of the first amendment; (2) enjoining Judge Morton from enforcing the closure order and directing him to vacate the order; (3) directing Judge Morton to provide it with a complete transcript of the suppression hearing; and (4) requiring that in regard to any future closure of pre-trial proceedings, Judge Morton (a) "issue articulated findings" regarding the adequacy of closure alternatives, particularly change of trial venue, and (b) refrain from ordering closure unless it is shown to be the least restrictive remedy.

A motion by Judge Morton to dismiss the complaint was filed on December 20, 1985; a motion for summary judgment by Batavia News was filed on January 16, 1986; and oral argument on both motions was heard March 20, 1986. On March 4, 1988, approximately two years after the matters were taken under advisement, the district court filed its Memorandum and Order denying the motion to dismiss the complaint and granting summary judgment "declaring Judge Morton's action unconstitutional" and ordering "that the plaintiff may

recover from the defendant its necessary costs and a reasonable fee." The district court rejected Judge Morton's arguments urging eleventh amendment immunity, mootness, the abstention doctrine and failure to invoke available state remedies as grounds for dismissal. Finding that the dispute between the parties is "capable of repetition yet will likely evade review in the future," the court gave the following rationale for granting summary declaratory judgment to Batavia News:

> Judge Morton failed to articulate that specific—or any—alternatives to closure had been seriously considered and the reasons why those alternatives had been found wanting. Thus, to the extent that Judge Morton failed to articulate findings adequate to support closure, the decision to close the suppression hearing violated plaintiff's First Amendment rights. Such failure is declared.

## DISCUSSION

When Judge Morton issued the closure order in the Ferringer case on January 31, 1985, the public's first amendment right of access to suppression hearings was far from settled. The Supreme Court had applied a first amendment right of access to criminal trials, *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), including jury selection, *Press–Enterprise Co. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) ("*Press–Enterprise I*"), but not to pre-trial proceedings. The following test for closure of a criminal trial was established in *Press–Enterprise I*:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.

464 U.S. at 510, 104 S.Ct. at 824.

In *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), the Supreme Court considered whether a defendant's sixth amendment right to an open trial prevented the closure of a hearing to suppress wiretaps and evidence seized as a result of the wiretaps. The Court there held that closure over the defendant's objection would be prohibited unless the party seeking the closed hearing met a test similar to the one established in *Press–Enterprise I* by showing: that there was an overriding interest likely to be prejudiced; that closure was no broader than required to protect that interest; that reasonable alternatives were considered by the court; and that findings adequate to support closure were made by the court. *Id.* at 48, 104 S.Ct. at 2216. The assertion of a first amendment right of access by a newspaper in response to a motion for closure made by the defendant in the criminal proceeding distinguishes the case at bar from *Waller*.

Although there was no Supreme Court decision dealing with a defendant's first amendment right to exclude the public and the press from a pre-trial hearing at the time of Judge Morton's order, there was then extant a decision by a divided panel of this Court dealing with that very issue. In *Application of the Herald Co.*, 734 F.2d 93 (2d Cir.1984), we recognized "that the First Amendment extends *some degree* of public access to a pretrial suppression hearing," *id.* at 99 (emphasis supplied). "Until authoritatively instructed by the Supreme Court," we expressed our "reluctan[ce] to frame a test for closure of a pretrial suppression hearing that incorporates the rigorous First Amendment standards associated with abridgement of free expression." *Id.* at 100. Accordingly, a standard was formulated allowing closure to be ordered "upon a showing of a significant risk of prejudice to the defendant's right to a fair trial or of danger to persons, property, or the integrity of significant activities entitled to confidentiality." *Id.* Our remand in *Herald* required the trial judge to "articulate on the public or sealed record a sufficiently detailed basis for his serious concern about public dissemination risks and for his marked preference for closure over

alternative remedies." *Id.* at 103. The panel dissenter rejected the notion of any first amendment right of access to a suppression hearing. *Id.* at 106–07.

Citing in his decision *Waller* as well as *Herald* (referred to therein as *U.S. v. Klepfer*), Judge Morton determined (1) that "some qualified right" to attend pretrial proceedings was vested in the public and the press and (2) that neither the extent of the right nor the showing of necessity required for closure had been defined clearly as a matter of federal law. Accordingly, following what he perceived to be the New York rule, Judge Morton required the defendant to "demonstrate a strong likelihood that evidence relevant and admissible at the pre-trial hearing would prejudice his right to a fair trial if it were prematurely disclosed." Although he made no separate factual findings on the issue, the Judge concluded "that the defendant has made the required showing." Alternative remedies, such as expanded voir dire and change of venue, were rejected.

The definitive answer to the question of a first amendment right of access to pretrial proceedings was not given by the Supreme Court until approximately a year and a half after Judge Morton issued his closure order. It was in *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("*Press–Enterprise II*"), that the Court was confronted with an order closing a preliminary hearing in a California criminal proceeding on the unopposed motion of the defendant. The California Supreme Court had determined that the right of access to criminal proceedings recognized in *Press–Enterprise I* extended only to criminal trials and therefore that there was no general right of access to preliminary hearings. It had decided that the statute providing for closure of preliminary hearings required only that the defendant establish a reasonable likelihood of substantial prejudice in order to shift the burden to the prosecution or the media seeking an open hearing to show otherwise by a preponderance of the evidence.

In reversing the California Supreme Court, the Court in *Press–Enterprise II* reached the following conclusions: "the qualified First Amendment right of access to criminal proceedings applies to preliminary proceedings as they are conducted in California ...;" "the proceedings cannot be closed unless specific, on the record findings are made demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.' *Press–Enterprise I* ...;" and where the interest to be served is the defendant's right to a fair trial, the specific findings demonstrate "first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial right." 478 U.S. at 13–14, 106 S.Ct. at 2743–44.

The district court below, finding that an injunction would be "intrusive and unworkable," issued a judgment declaring Judge Morton's order violative of the first amendment rights of the Batavia News. According to the Memorandum and Order of the District Court, that judgment is bottomed on Judge Morton's failure to (1) consider alternatives to closure and give reasons for rejecting those alternatives and (2) articulate findings adequate to support closure. As to the first item, it appears that Judge Morton did take into account the alternatives of expanded voir dire and change of venue but rejected them because they were not remedies "of choice" when "only" a qualified right of access was involved and, in the matter of a venue change, because there was no justification for sacrificing a right as important as trial in the prescribed county.

While Judge Morton did not make specific findings justifying closure, he did determine that there was a strong likelihood of prejudice to the right of fair trial in the absence of closure. When he ordered the suppression hearing in the Ferringer case to be closed, there was yet no Supreme Court decision providing the press with a first amendment right of access to a suppression hearing. Although our *Herald*

case was available, it was not binding on him as a state judge. We note, however, that our test in *Herald* ("significant risk of prejudice") and the test applied by Judge Morton ("strong likelihood of prejudice") were similar to the one ultimately adopted by the Supreme Court in *Press–Enterprise II* ("reasonable likelihood of substantial prejudice"). Judge Morton's failure to make specific findings, a criticism available only as a matter of hindsight after *Press–Enterprise II*, cannot under the circumstances form the basis for a declaratory judgment against him for violation of a constitutional right. We note that Judge Morton's view of the first amendment right of access to pre-trial criminal proceedings was closer to the test adopted by the Supreme Court in *Press–Enterprise II* than that of the California Supreme Court and much closer than the view of the dissenter in *Herald.*

In any event the action is moot and should have been dismissed by the district court for that reason. The transcript of the hearing became available to Batavia News within a month after the action was commenced. The district court rejected the mootness defense on the ground that the dispute between the parties was capable of repetition but would evade review unless addressed in this case. It determined that "[t]he fact that the plaintiff operates a newspaper creates a reasonable expectation that it may in the future be again subject to such an order [of closure]." The district court erred in its application of the exception to the mootness doctrine.

 Once a challenged order expires and becomes moot, as did the order here, a reviewing court retains jurisdiction only when the dispute is one capable of repetition yet escapes review because "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Gannett Co. v. DePasquale,* 443 U.S. 368, 377, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979). The second prong of the test has not been met here,

because there is no indication whatsoever that Judge Morton will not in the future apply the specific findings requirement established by the Supreme Court in *Press–Enterprise II* and by the New York Court of Appeals in *In re The Associated Press v. Bell,* 70 N.Y.2d 32, 517 N.Y.S.2d 444, 510 N.E.2d 313 (1987), a decision by New York's highest court that also post-dated Judge Morton's conscientious and thoughtful opinion. That opinion should have been accorded the same respect by the district court as it would have been accorded by the New York Court of Appeals under similar circumstances:

> We cannot conclude that the trial court would have followed the procedures which he did or that he would necessarily have reached the same conclusion had our decision ... preceded the hearing. While we can anticipate that the implementation of the principles that we have declared will not always be easy, we have no reason to question the readiness or capacity of the Judges at nisi prius to seek to implement them appropriately with diligence, faithfulness and imagination. We conceive our jurisprudential role in this field as one of supervising and monitoring the dispositions made by our lower courts after we declare the applicable principles, rather than retrospectively appraising conduct of Trial Judges that preceded our declarations.

*In re Hearst Corp. v. Clyne,* 50 N.Y.2d 707, 716–17, 431 N.Y.S.2d 400, 409 N.E.2d 876 (1980).

## CONCLUSION

In accordance with the foregoing, we reverse the judgment of the district court and remand for entry of judgment in favor of defendant-appellant.