OPINION OF THE COURT
Charles F. Cacciabaudo, J.
By order to show cause, the District Attorney has moved *946 this court for an order directing Christopher L.* to provide a sample of his blood to the People of the State of New York in connection with the above investigation.
At the outset, on May 3, 1989, prior to any consideration of the People’s application on the merits, counsel for Christopher L. orally moved this court for an order of closure making an in camera application to have the courtroom closed to the press and public on the ground that Christopher L.’s privacy interest outweighed the media’s interest in disclosure. He further moved to seal the results of any findings made by this court in connection with the People’s application.
Opposition to the closure application was voiced by the members of the media, specifically Times Mirror/Newsday, Record Newspapers and WNBC-TV, who were present and who, in addition to opposing closure of the courtroom, affirmatively requested permission to conduct audio-visual coverage of the proceedings.
In closed session, counsel for Newsday requested an opportunity to be heard in writing in opposition to the closure application. This court granted Newsday’s application and adjourned decision on the matter pending receipt of News-day’s opposition papers on the closure application which were received by this court on May 5, 1989.
After considering the various arguments both in support of and opposed to the closure application and after examining the applicable law in this area, it is the determination of this court, after balancing the sensitive issues herein presented, that Christopher L.’s privacy interest outweighs the media’s interest in disclosure.
As a result, and for the following reasons, the application to close the courtroom to the press and public is granted and no audio-visual coverage will be permitted with respect to any of the proceedings concerning the People’s application to compel Christopher L. to provide a sample of his blood.
Additionally, the court’s findings with respect to this issue shall be sealed.
Section 4 of the Judiciary Law provides that "[t]he sittings of every court within this state shall be public,” but this right of the public and press to attend court proceedings is clearly not absolute. Indeed, even when a trial court is considering *947 public disclosure of proceedings relating to one who is formally charged with a crime, the court must balance and reconcile, as far as possible, the accused’s right to a fair trial and the access rights of the public and press (Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430; Matter of Gannett Co. v De Pasquale, 43 NY2d 370, affd 443 US 368; Matter of Oneonta Star Div. of Ottaway Newspapers v Mogavero, 77 AD2d 376, appeal dismissed 53 NY2d 796).
The authority relied on and cited by counsel for Newsday in support of their position to deny closure all concern criminal proceedings of individuals who have been formally charged and accused of a crime, and even in those situations, trial courts are empowered with the discretionary authority to determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access of the public and press (see, Matter of Associated Press v Bell, 70 NY2d 32).
The point of difference here, and the distinction which is quite formidable, is that Christopher L. has not been charged with nor formally accused of any crime. He is merely a suspect and as a suspect, with respect to the issues herein presented, a different standard applies. One who is merely a suspect is clearly entitled to even greater protection than one who has been formally accused of a crime. This court is charged with a duty of protecting and preserving the anonymity of uncharged suspects, a responsibility this court takes quite seriously. Contrary to the position asserted by counsel for Newsday, the fact that Christopher L. has not been charged with a crime is the determining factor relied on by this court in concluding that closure is appropriate (see, Matter of Troy Publ. Co. v Dwyer, 110 AD2d 327).
Formal accusation of an individual changes an investigation of criminal activity into a particularized prosecution. Traditionally, the investigatory process of the Grand Jury, which precedes disclosure of the identity of a defendant, has been cloaked in secrecy (see, CPL 190.25 [4]; Public Officers Law § 87 [2] [e]). There are many reasons for this which include protecting the innocent from unfounded accusations if, in fact, no indictment is returned (People v Di Napoli, 27 NY2d 229). There is simply no erasing the stigma and detriment to one’s reputation which frequently flow from merely having been subjected to criminal process (Matter of Hynes v Karassik, 47 NY2d 659). Consequently, courts have historically been sensitive to the need of guarding the privacy interests of suspects *948 against intrusions from organized society (see, Matter of Abe A., 56 NY2d 288; Matter of Troy Publ. Co. v Dwyer, supra).
Furthermore, the underlying proceeding at issue, one to compel the production of a suspect’s blood sample, is relatively new and unique in application and has its origin in the power of the courts to issue warrants. In this regard, it is important to note that in determining an application for a search warrant, a hearing and examination of witnesses is often appropriate (see, CPL 690.40 [1]), but there is no precedent for opening this procedure to the public.
Accordingly, it is the determination of this court that the proceedings to compel the production of a blood sample from Christopher L., who is merely a suspect in this investigation, are beyond the reach of the access provision of Judiciary Law § 4, nor are such proceedings presumptively open to the public and press by virtue of the First Amendment to the US Constitution. The limited First Amendment public right of access to criminal proceedings emanates from the long, historical tradition of openness of criminal trials and the major role which public access plays in the proper functioning of the criminal justice process (see, Globe Newspaper Co. v Superior Ct., 457 US 596), whereas proceedings to obtain corporeal evidence are creatures of fairly recent creation which derive from the court’s power to issue search warrants, a traditionally nonpublic component of the criminal process (Matter of Troy Publ. Co. v Dwyer, supra).
This court has carefully considered the arguments of respective counsel in connection with the closure application and has conducted its own personal search on the applicable statutory and case law in this area and after doing so has come to the conclusion that the principle of balancing the privacy rights of the individual against the public’s rights in disclosure must be applied on an ad hoc basis.
Where, as in the instant matter, the individual is merely an uncharged suspect, his privacy interest clearly outweighs the public and press’ interest in disclosure.
Additionally, it should be noted that this court finds totally without merit counsel for Newsday’s argument that since the suspect’s name as well as other factual information has already been reported, there are no longer any privacy interests left to protect. Nothing could be further from the truth, for although this case has already received extensive media attention, that fact does not effect an abdication of a suspect’s *949 continued expectation of privacy while the criminal investigation is being conducted (Matter of Troy Publ. Co. v Dwyer, supra).
The mere fact that representatives of the police and/or District Attorney’s office have directly or indirectly disclosed substantial evidentiary and factual information to the media concerning this matter does not act as a waiver of the individual suspect’s protected privacy rights. Were this court to accept this position would, in effect, be a condonation of what it considers irresponsible and condemnable behavior on the part of the prosecutor with respect to the substantial disclosure he has already permitted.
In the area of trial publicity, ethical constraints are placed on a prosecutor from publicly disseminating extrajudicial statements after commencement of a criminal action where an individual has been formally accused of a crime (see, Code of Professional Responsibility DR 7-107). In that situation, certain disclosures are permitted while others are not. However, where an individual has not been formally charged with any crime, it is this court’s position that the ethical considerations involved require even greater responsibility on the part of the prosecutor from disseminating sensitive information to the public.
The actions of the prosecutor in this case, in publicly identifying the suspect on all court papers in connection with the investigation, smacks of irresponsibility and a breach of his ethical obligation. On this issue, it is this court’s opinion that the prosecutor has violated, if not the letter, the spirit of the law.
A practice generally accepted by the appellate courts of this State in situations such as we have here is the use of an anonym to keep confidential the identity of a presumptively innocent suspect (Matter of Abe A., 56 NY2d 288, supra; Matter of Troy Publ. Co. v Dwyer, supra).
It is both unfortunate and disappointing that the prosecutor chose not to follow this simple recommended procedure. This court simply cannot find any legitimate reason nor justification for the actions of the District Attorney with respect to the extensive public disclosures already made.
It is, therefore, the determination of this court that the privacy interests of Christopher L. clearly outweigh the public and press’ interest in disclosure. As a result, it is the judgment of this court to close the proceedings to the public and *950 press as it relates to the People’s application for a court-ordered blood sample from Christopher L.
Additionally, the court’s findings with respect to this issue shall be sealed, and no audio-visual coverage with respect to any of these proceedings shall be permitted.
Accordingly, based on the foregoing, Christopher L.’s applications to close the courtroom to the public and press and to seal the court’s findings with respect to the People’s underlying discovery application is hereby granted.

 This court deems appropriate the use of an anonym, notwithstanding extensive public disclosure of suspect’s name, either directly or indirectly, by the Office of the District Attorney.