■ In the Matter of JOHNSON NEWSPAPER CORPORATION, Petitioner, v LEE CLARY, Individually and as Jefferson County

Court Judge, et al., Respondents.—Petition unanimously dismissed without costs. Memorandum: Petitioner, Johnson Newspaper Corporation, brought this CPLR article 78 proceeding against the County Court Judge of the County of Jefferson challenging his determination to close a suppression hearing in a criminal case involving arson and murder. In support of its argument that the court erred in closing the hearing, petitioner relies on the case of *Matter of Associated Press v Bell* (70 NY2d 32, 38-39).

There is a significant difference, however, between the facts in this case and those in *Matter of Associated Press v Bell (supra)*. In *Bell* (128 AD2d 59, 62), the Appellate Division made a specific finding of fact that defendant had "made detailed statements to the public and press disclosing most, if not all, of the information he now seeks to keep secret. Indeed, this record discloses that defendant, in his own pretrial motions, has made the matters he now seeks to suppress freely available to the media". Here, there is no indication that defendant made any statements to the press and the only information revealed to the press concerning defendant's statement to the police was revealed at the preliminary hearing and was limited essentially to a statement by a police officer that defendant told him he had started the fire and that the confession had been videotaped. The detailed and extensive statements in the two interviews recorded on videotape were not made known to the press.

Other differences are that in *Bell* (70 NY2d 32, 36, *supra*), the trial court acknowledged that "it did not know what tainted evidence (if any) there might be and it did not know whether disclosure of potentially suppressible evidence would impede obtaining an impartial jury" but nevertheless closed the hearing on the "possibility" that there might be such evidence and that it might affect jury selection. Here, the court had examined the statements made by defendant to the police that are included in the videotaped recordings and, based on those materials, it concluded that there was a substantial probability that, if the information on the videotapes were to be reported to the public and if later suppressed, it would be virtually impossible to pick a jury that would not be affected by the publicity. The court concluded that, on the basis of its knowledge, without divulging the contents of the admissions and statements, the defense had met its burden of showing a significant probability of prejudice if the material were released.

In *Bell (supra),* the community from which the jury was to

be drawn was a large metropolis whereas, here, the community, as noted by the court, is small, with a population of around 100,000 people, and the daily newspaper serving the community is read by a vast majority of those people. In *Bell (supra)*, there was no indication of the likelihood of whether defendant's statements would be suppressed whereas, here, there is a probability that a substantial part, if not all, of the statements will be suppressed.

The Court of Appeals in *Bell (supra)* recited that the right of the press to attend suppression hearings is not absolute. "Although open criminal proceedings in general and open suppression hearings in particular serve to assure fairness and integrity, there are circumstances where the right of the accused to a fair trial might be inhibited or undermined by unrestricted publicity *(Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430, 443-444, *supra)*. Where a defendant's right to a fair trial is threatened 'the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access' *(Press-Enterprise II,* 478 US 1, 9-10, *supra)" (Associated Press v Bell, supra,* at 38-39). Here, the court properly determined that, under all of the circumstances, the rights of the accused override the qualified First Amendment right of access.

The Court of Appeals has commented upon the devastating effect of pretrial publicity of prejudicial matters that would not be admissible at trial. Referring to its decision in *Matter of Gannett Co. v De Pasquale* (43 NY2d 370, *rearg denied* 43 NY2d 846, *affd* 443 US 368), the court, in *Matter of Westchester Rockland Newspapers v Leggett* (48 NY2d 430, 438, *supra),* wrote: "Our decision in *Gannett* struck the balance in favor of the accused because of the grave threat that suppressed evidence, if publicly disclosed prior to trial, would virtually eliminate the possibility that the accused would receive a fair trial in a highly publicized case. The very purpose of pretrial suppression hearings is to determine whether certain evidence should be submitted to the jury at trial. They usually involve the admissibility of confessions, eyewitness identifications, contraband, fruits or evidence of crime, or wiretap recordings (see CPL 710.20)—the type of proof which may often be considered extremely persuasive, if not conclusive evidence of guilt. Indeed we have recognized that 'nothing could be more conclusive evidence of the defendant's guilt than a signed confession' *(People v Jones,* 47 NY2d 528, 534)."

The court further noted that such "proof is so difficult, and

in some cases impossible * * * to * * * ignore once it has been revealed", and that "[i]f these hearings were open to the public and the press in a well-publicized case, it is most likely that the substance of the evidence would be disclosed to the community from which the jurors would be drawn, even though the court may ultimately rule that the evidence should not be submitted to the jury at trial. That would not only destroy the purpose for which the hearing was held, but would, perversely, have the very opposite effect of that intended and desired. Instead of shielding the jurors from evidence they should not hear, the public airing at the pretrial suppression hearing would serve to broadcast the evidence to most, if not all potential jurors" *(Matter of Westchester Rockland Newspapers v Leggett, supra,* at 438-439).

Here, because of the nature of the case and the extensive publicity it has received in the relatively small community, it is not only likely, but inevitable, that if the pretrial hearing is open to the press, the highly prejudicial evidence will be disclosed to the community from which the jury is to be drawn, even though there is a probability that the court will rule that the evidence will not be admissible at the trial. That would destroy the purpose for which the hearing will be held and would broadcast all of the details of the damaging and highly prejudicial, but inadmissible, evidence to the potential jurors. Although, in many cases, a careful voir dire may serve to protect the right of an accused to a fair trial, the court did not abuse its discretion in concluding that in this case it would be insufficient, given the short interval expected between the suppression hearing and the trial.

Although the Trial Judge could have been more explicit in referring to the facts supporting his findings that defendant had shown a significant probability of prejudice if the evidence at the suppression hearing were released, to have been more explicit would, as the court stated, have divulged prejudicial evidence. The Court of Appeals has recognized that "the requirement of 'specific findings' cannot be so stringent as to, in effect, divulge that which is sought to be kept confidential" *(Matter of Associated Press v Bell,* 70 NY2d 32, 39, *supra).*

Under the circumstances, the court's findings were as specific as they could be without creating the very prejudice to defendant that the closure of the suppression hearing was designed to avoid. (Original art 78 proceeding.) Present—Doerr, J. P., Denman, Boomer and Pine, JJ.