OPINION OF THE COURT
David B. Saxe, J.
The right of the public and the press to attend court proceedings is generally a constitutional entitlement (see, US Const 1st Amend; NY Const, art I, § 8; Richmond Newspapers v Virginia, 448 US 555, 580-581 [1980]; Matter of Associated Press v Bell, 70 NY2d 32, 37 [1987]). The press’s constitutional right of access is not absolute, however; it must be based upon a finding (1) that the forum or type of proceeding has been historically open to the public and (2) whether public access plays a significant positive role in the functioning of the process in question (Matter of Katherine B., 189 AD2d 443, 449 [2d Dept 1993], citing Matter of Johnson Newspaper Corp. v Melino, 77 NY2d 1 [1990]). In contrast to the case of Katherine B., which concerned a Family Court child protective proceeding, the custody trials held in the New York State Supreme Court have historically been open to the public.
Furthermore, public access has always played a significant positive role in this court. The public has a legitimate interest in knowing the substance of court proceedings, and the integrity of the judiciary is protected by keeping those proceedings open (see, Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 437 [1979]). Unlike the uncontested guardianship proceedings discussed in Matter of Douglas (NYLJ, Mar. 31, 1995, at 37, col 2 [Sur Ct, Westchester County] [Emanuelli, S.]), public scrutiny of a contested custody trial can do much "to promote public understanding of, or confidence in, the judicial system” (Matter of Douglas, supra). Indeed, I disagree with Surrogate Emanuelli’s distinction between civil and criminal matters: public scrutiny of a custody trial indeed can "promote fairness and due process and tends to prevent perjury, misconduct and biased results” (Matter of Douglas, supra).
Judicial proceedings are therefore presumptively open to the public and the press (Richmond Newspapers v Virginia, supra), "unless there are compelling reasons for closure” (see, Merrick v Merrick, 154 Misc 2d 559, 562 [Sup Ct, NY County 1992, Saxe, J.], affd 190 AD2d 516 [1st Dept 1993]). Consistent with *872 this rule, the Legislature has directed open courtrooms, specifically making exceptions for certain potentially delicate types of proceedings, including divorce (and, by extension, custody) matters (see, Judiciary Law § 4). However, this exception does not completely vitiate the presumption of open courtrooms whenever child custody is at issue. A courtroom may be closed in a custody case only if "the evidence * * * be such that public interest requires that the examination of the witnesses should not be public” (Domestic Relations Law § 235 [2]).
The public interest must be acknowledged to include the protection of children generally from injury. However, we cannot assume that harm will result merely by virtue of public access to a custody trial. Otherwise, all custody trials would be required to be closed to the public. But, that is not the law.
Courtroom closure is not sought in most custody cases because most of the time the press is not clamoring to attend such trials. But, the fact that people seek to watch or report on a trial cannot in itself serve as the basis to close a custody trial. Are we to close courtrooms for custody trials only when the press and public want to attend?
The standard must be the same, whether or not the public and press are clamoring to attend the trial: a viable showing must be made that actual, substantial harm, emotional or physical, will result to the children from such public access to the proceedings, which can be avoided by sealing the courtroom. And even then, the nature and extent of the asserted harm must be balanced against the competing interest of keeping the courtroom open (see, Sprecher v Sprecher, NYLJ, June 21, 1988, at 21, col 6 [Sup Ct, NY County], mod sub nom. Anonymous v Anonymous, 158 AD2d 296 [1st Dept 1990]).
It has been held that the burden imposed upon the movant requires a demonstration that the proposed limitations on the public’s right of access are (1) essential to preserve a higher value; (2) narrowly tailored to serve that interest; and (3) effective at preventing the identified harm (see, Press-Enterprise Co. v Superior Ct. of Cal., 464 US 501, 509-510 [1984]; Press-Enterprise Co. v Superior Ct., 478 US 1, 14 [1986]; Matter of Associated Press v Bell, 70 NY2d 32, 39, supra; Matter of Westchester Rockland Newspapers v Leggett, 48 NY2d 430, 442, supra). It has also been suggested that this court has the authority to consider reasonable alternatives less invasive of the public’s right to access to judicial proceedings than closure *873 of the courtroom during the entire trial (see, Matter of Associated Press v Bell, 70 NY2d, at 39, supra).
However we word the standard, the issue is whether real injury will be caused to the children by virtue of a public trial, and whether closing the courtroom will serve to prevent such injury to them. As to the harm resulting from the media exposure of the private lives of the Culkin children, it must be recognized that these are not ordinary children. This is a family of professional actors, the most famous of whom is known internationally and has been called the best-known child actor since Shirley Temple. If the younger children, who are not currently actors, display the necessary ability, they will also undoubtedly be directed into the field of acting. This family is by definition in the limelight, and all are the equivalent of public figures. Coverage in the media is a fundamental part of their lives, and must necessarily include negative as well as positive press-release style information. "While it is unpleasant to read, or have others read, about negative elements of one’s family relationships, that unpleasantness alone does not demonstrate harm.
The issues to be resolved here do not appear to involve events or circumstances that are personally humiliating to these children. To date, I have been made aware of no allegations involving areas likely to cause such personal embarrassment, such as physical or sexual abuse. Indeed, while it has been asserted that the report or testimony of the court-appointed forensic psychiatrist will be of an intrusive and embarrassing nature, I have not yet seen the report and cannot conclude whether his testimony is likely to cause personal humiliation or embarrassment to any of the children.
This dispute centers on which parent is better able to care for the children, including managing and directing the careers of these child actors. The trial will largely concern the parties’ interpersonal skills and business acumen, and testimony will in all likelihood focus primarily not on the conduct or personalities of the children, but on those of the parents. Such evidence does not rise to the level of private matters whose exposure would be injurious to the children.
I have read the affidavits submitted by the children’s guardian ad litem on this motion, which do not detail any particular harmful or humiliating circumstance to be brought out at trial. Rather, the only distinction between this case and all other custody cases is that here the public and press are interested *874 in the case, and as a result members of the press are covering the case and the lives of the family. That interest and attention alone does not satisfy the movant’s burden. Furthermore, regarding the guardian’s concern about the intrusion of the press into the family’s private life, there is no reason to believe that sealing the courtroom will have the desired effect of causing the press to lose interest in either the trial or the family.
Complete closure of the courtroom in this matter would be neither narrowly tailored nor the least intrusive manner in which to address the possibility of real harm to the children. However, it may well be that testimony will be taken, which might be personally humiliating to some of the children: for instance, if the testimony of the forensic psychiatrist will include psychological diagnoses, evaluations of maladjustment or other assertions likely to humiliate a child. If that is the case, I will entertain in camera offers of proof and upon an appropriate showing, will close the courtroom for that portion of the trial. With the assistance of counsel in monitoring the expected testimony, the court should be able to avoid the publicizing of any humiliating information regarding the children.
However, on the showing before me, the motion to seal the courtroom is denied.
The records of this case shall be sealed as provided for in Domestic Relations Law § 235 (2).