OPINION OF THE COURT
Michael L. D’Amico, J.
The defendant, James Kopp, is charged under Indictment No. 98-2555-S01 with two counts of murder in the second degree. It is alleged that the defendant, on October 23, 1998, caused the death of Dr. Barnett Slepian by shooting him.
There has been considerable interest by the media in this case and numerous applications for audio-visual coverage have been made to this court. There is no mechanism under current New York law to entertain those applications, other than part 131 of the Rules of the Chief Administrator of the Courts (22 NYCRR). On its face section 52 of the Civil Rights Law, however, renders part 131 without effect with respect to those applications.
On December 13, 2002, under Indictment No. 98-2555-S01, the Buffalo News (hereinafter the News), as proposed intervenor, moved for an order of this court allowing still photographic trial coverage. At the same time, under Index No. 13043-2002, the News and one Robert Kirkham, a staff photographer (hereinafter Kirkham), initiated a separate action for declaratory judgment that section 52 of the Civil Rights Law is unconstitutional in barring media coverage of courtroom proceedings. Named in the declaratory action as defendants were the State of New York, George E. Pataki as Governor, Eliot Spitzer as Attorney General, Frank J. Clark as District Attorney of Erie County and James C. Kopp as defendant in People v Kopp under Indictment No. 98-2555-S01.
On December 17, 2002, WGRZ-TV, Gannett Broadcasting and NBC News (hereinafter NBC) moved this court for access to videotape and/or televise the trial and related court proceedings in the instant prosecution as intervenors and, in their own separate declaratory action, under Index No. 13181-2002, also moved for a judgment declaring that section 52 of the Civil Rights Law is unconstitutional as it applies to this request. The defendants named in this action mirror those named in the above-referenced declaratory action brought by the News.
On December 23, 2002, LIN Television Corporation (hereinafter LIN), owners and operators of WIVB-TV, also moved for *477 permission, as an intervenor, to televise all court proceedings in the matter of People v Kopp while initiating a separate action for declaratory judgment under Index No. 13400-2002, naming the same defendants and seeking the same relief sought in the above-referenced declaratory actions. A supplemental affidavit requesting the addition of WNLO-TV, another local affiliate owned and operated by LIN, was submitted by this plaintiff on January 15, 2003.
The Attorney General of the State of New York, Eliot Spitzer, appeared in opposition to two of the intervention motions and moved to dismiss all of the declaratory actions.
The matter came on to be heard before this court on January 8, 2003 at which time the News and Kirkham appeared by their attorney, Joseph M. Finnerty, Esq.; NBC by Nixon Peabody LLP, Mark A. Malloy, Esq. of counsel; LIN by Hodgson Russ, Attorneys at Law, Paul Perlman, Esq. of counsel; the State of New York by Attorney General, Eliot Spitzer, Barbra Kavanaugh, Assistant Attorney General of counsel; the Erie County District Attorney Frank J. Clark by Joseph Marusak, Assistant District Attorney of counsel, and James C. Kopp by Bruce A. Barket, Esq. and John V. Elmore, Esq.
The United States of America, by the United States Attorney General, subsequent to oral argument hereinabove referred to, moved for permission to intervene in opposition to allowing all camera access to the court proceedings in People v Kopp or for authorization to appear as amicus curiae in opposition.
Plaintiff, the News, first argues that there is no New York statute, rule, regulation or other prohibition, applicable to New York State’s trial courts, that expressly operates as a blanket bar of still photography in the courtroom. Specifically, the News claims that section 52 of the Civil Rights Law is inapplicable in that still photography is not expressly referred to in that statute as opposed to the taking of motion pictures, televising or broadcasting of events. In the alternative, the News and Kirkham argue that in the event the court finds that section 52 does prohibit still photography, then they seek a declaratory judgment that section 52 is unconstitutional under the New York State Constitution and/or the United States Constitution and enforcement should therefore be permanently enjoined. The other plaintiffs, NBC and LIN, also seek declaratory judgments determining that section 52 of the Civil Rights Law is an unconstitutional statute under the New York State Constitution and/or the United States Constitution since it abridges their protected right of access to New York courts.
*478 In reply, the Attorney General states that he takes no position on the statutory interpretation as to whether section 52 applies to still photography, but moves to dismiss each of the declaratory actions arguing that there is no federal or state constitutional right to televise or videotape trial proceedings.
The People advise that they do not oppose any of the motions for media access and, in fact, support the applications. Defendant Kopp argues that the taking of still photographs will inevitably “highlight important moments” in the proceeding as deemed by the photographer and, therefore, this uncontrolled access may prove prejudicial to the defendant and detrimental to the defense being presented. The defendant does not object to the request for electronic media access and supports this application.
The United States of America objects in general to all of the requests herein on the grounds that all media coverage would jeopardize the fair administration of justice in the pending federal prosecution of defendant Kopp in a number of ways, including but not limited to the polluting of any potential local jury pool and/or the chilling effect upon potential witnesses. Inasmuch as there appears to be a real and substantial interest that may be prejudiced in the subject criminal prosecution, namely, the ability or inability to take still photography or to record and broadcast the criminal proceedings in this matter, intervention status is hereby granted to all of the proposed intervenors (see CPLR 1013). Having demonstrated that the interests of the United States in providing a fair trial of the defendant in federal court may be directly affected by the subject actions, amicus curiae status is hereby granted.
The first question before this court is whether the current law in New York, expressed in section 52 of the Civil Rights Law, is constitutional under both the United States Constitution and the Constitution of the State of New York. The First Amendment to the Federal Constitution and article I (§ 8) of the New York Constitution provide that there shall be no law abridging the freedom of speech or of the press. The Sixth Amendment to the Federal Constitution also guarantees persons accused of a crime the right to a public trial.
It is, of course, by statute that cameras are banned in New York courtrooms. Civil Rights Law § 52, in pertinent part, states:
“No person, firm, association or corporation shall televise, broadcast, take motion pictures or arrange for the televising, broadcasting, or taking of motion pictures within this state of *479 proceedings, in which the testimony of witnesses by subpoena or other compulsory process is or may be taken, conducted by a court, commission, committee, administrative agency or other tribunal in this state * *
Section 52 of the Civil Rights Law was enacted in 1952, and although the New York State Legislature subsequently passed legislation between 1987 and 1997 which authorized a series of experiments allowing cameras in the courts, there is no current legislation modifying, suspending or repealing section 52.
Since the experiments ended, however, there have been numerous applications by media representatives to trial courts to permit coverage. The various trial courts entertaining such applications have come dbwn squarely on both sides of the issue. Some have declared section 52 unconstitutional (see People v Santiago, 185 Misc 2d 138 [Monroe County 2000]; People v Boss, 182 Misc 2d 700 [Nassau County 2000]; People v Jones [Erie County 2001]; People v Schroedel [Sullivan County, Mar. 5, 30, 2001]). Some have determined that section 52 is indeed constitutional (see People v Alvarez-Hernandez, 2002 NY Slip Op 50493 [U] [Westchester County 2002]; People v McKenna and People v Bonanni [Albany County 1999]).
To date, no appellate court in New York has made a determination as to the constitutionality of section 52 or that the media has a presumptive right to televise courtroom proceedings. In fact, no appellate court anywhere, so far as this court can determine, has ever made a determination that it is unconstitutional to prohibit the use of cameras in court. Although the leading federal case, the United States Supreme Court decision in Estes v Texas (381 US 532 [1965]), has been interpreted to conclude that due process rights of an accused are not inherently denied by television trial coverage, and that no per se constitutional rule prohibits the state from permitting broadcast coverage of criminal proceedings (see Chandler v Florida, 449 US 560 [1981]), the five Justices in Estes also clearly stated that the media has no First Amendment right to televise proceedings.
Chandler (supra) made it clear, however, that, consistent with constitutional guarantees, coverage could be authorized, notwithstanding the objection of defendants.
Plaintiffs have argued that there is a “presumptive First Amendment right of the press to televise as well as publish court proceedings, and of the public to view those proceedings on television” as articulated in Katzman v Victoria’s Secret Catalogue (923 F Supp 580, 589 [SD NY 1996]). Katzman, *480 however, made no such holding. Also, Katzman drew a clear distinction between the civil matter it was dealing with and a criminal case. In any event, the assertion of a “presumptive First Amendment right” is clearly dicta.
In United States v Moussaoui (205 FRD 183 [2002]), the court held that the local rule banning the photographing and broadcasting of federal criminal procedures is not unconstitutional and that the public’s right of access to a criminal trial is not absolute.
Those cases which deal with the Sixth Amendment right to a public trial have universally declared that a public trial does not encompass the use of cameras in the courtroom. The issue here is not one of closure of the courtroom. Media representatives, like any other member of the public, have a right to attend a criminal trial (with some limited exceptions) and to report on the events that take place in the courtroom.
Plaintiffs also allege that the ban on cameras in the courtroom is antiquated because it was based on the fact that cameras were obtrusive when section 52 was passed and that the original purpose of the legislation was to prevent any disruption of the proceeding by media representatives’ use of lights and cameras. Now, they argue, that problem is remedied by sophisticated equipment and the ability to have one camera, unobtrusively located, without the use of artificial light, capture the image for multiple news gatherers. Those facts are supported by each of four separate reports to the New York Legislature dealing with the issue. It is also pertinent to note that each of those reports recommended to the Legislature that the ban on cameras in the courtroom be lifted. During the experiments various committees of the Legislature also conducted numerous hearings across the state on the issue.
It is inconceivable that the New York State Legislature was somehow unaware of the recommendations in each of the reports or of the opinions of those who testified at hearings when it decided to end experimentation with cameras and cause section 52 to once again take effect. In spite of all of the arguments favoring cameras, the Legislature chose not to make permanent the use of cameras in the courtroom or even to extend the experiment in order to study this issue further. The matter was discussed and debated before legislation permitting cameras was allowed to sunset. It is difficult for this trial court to conclude or presume that the Legislature was somehow unaware that a nearly 50-year-old statute would once again become the law in New York.
*481 Therefore, in terms of making the case that they have a constitutional right to bring cameras in the courtroom, plaintiffs have fallen short.
To resolve the basic issue of whether or not Civil Rights Law § 52 is unconstitutional, this court believes that the Appellate Division of State Supreme Court and the New York Court of Appeals are better situated. It is clear, to this court at least, that the Legislature intended, and apparently still intends, to ban cameras in our courts.
This court, for whatever it’s worth, concludes that cameras in the courtroom can be permitted within our constitutional framework but also that any ban on the use of cameras in the courtroom is not unconstitutional.
Plaintiffs have noted that neither the People nor defendant James Kopp have objected to live coverage or the filming of the trial for later use by the media. Just as consent of the parties is not a prerequisite to a trial court’s decision to allow coverage, such consent does not compel the court to permit coverage. Consent or an objection to coverage, where cameras are otherwise permitted, is one factor to be considered by a trial judge and, in no event, is controlling on the issue.
It is noteworthy that in the instant case, the defendant does not object to video cameras in the courtroom but does object to the use of a still photographic camera.
This leads to discussion of a second issue before this court— the application by the News to take still photographs during the proceeding and whether or not section 52 prohibits such photography.
The News argues that section 52, by its express language, applies only to “televising, broadcasting or taking motion pictures.” Defendant Kopp, without commenting on the effect of section 52, opposes still photography but, as noted above, has no objection to video recording or even live broadcasting of the trial. The defendant makes many of the usual arguments against allowing cameras in general when opposing the use of still photography. Most notably he argues that a cameraman moving about the courtroom would be disruptive and that the cameraman may influence the jury by the mere fact that his shutter clicks at certain junctures thereby emphasizing a particular witness or specific testimony. Those arguments are frequently made by opponents of cameras in general when they point out that TV stations may show only brief excerpts of the day’s trial testimony on the nightly news. It is naive to presume *482 that jurors, not sequestered during a trial, would, firstly, be unable to discern for themselves what testimony is important and, secondly, be aware of news coverage in general of a high profile criminal case on which they serve as jurors. Just as these arguments have been unsuccessful in limiting or preventing camera use in those jurisdictions which have opted to allow cameras, they are unsuccessful here in defendant Kopp’s attempt to persuade the court that his rights to a fair trial and due process would be adversely affected.
This court concludes that still photography is not covered by Civil Rights Law § 52. Nonetheless, this court will consider the positions of the parties and other participants in the criminal action as well as the News in determining the scope of photographic coverage.
In virtually every jurisdiction which allows coverage — and consistent with the opinions of most courts — the trial judge is given broad discretion to determine when to permit camera coverage. In New York, when the experiment with cameras was authorized by the Legislature, the Chief Administrator of the Courts issued rules governing coverage (Rules of Chief Administrator of the Courts [22 NYCRR] part 131). Those rules will apply to the use of still photography during the trial of James Kopp in this court.
Consistent with those rules, this court will issue an order which may contain restrictions on the use of still photography after consultation with the applicant and the parties.
For all the foregoing reasons, the court hereby denies all applications to declare section 52 of the Civil Rights Law unconstitutional, dismisses, in full, each and every declaratory action brought in respect thereto and denies permission to videotape and/or televise the judicial proceedings in the case of People v Kopp. As to the applications of interveners NBC and LIN, the motions are denied in all respects. As to the application by the News, to allow access for still photographic coverage, the motion is granted, subject to the further order of this court.