[833 NE2d 1197, 800 NYS2d 522]

COURTROOM TELEVISION NETWORK LLC, Appellant, v STATE OF NEW YORK et al., Respondents.

Argued April 27, 2005; decided June 16, 2005

## POINTS OF COUNSEL

*Boies, Schiller & Flexner LLP,* Armonk and Washington, D.C. (*David Boies, Jonathan Sherman, David A. Barrett* and *George F. Carpinello* of counsel), and *Douglas P. Jacobs,* New York City, for appellant. I. The per se ban set forth in Civil Service Law § 52 is unconstitutional. (*Estes v Texas,* 381 US 532; *Westmoreland v Columbia Broadcasting Sys., Inc.,* 752 F2d 16, 472 US 1017; *Chandler v Florida,* 449 US 560; *Republican Party of Minn. v White,* 536 US 765; *Butterworth v Smith,* 494 US 624; *Burson v Freeman,* 504 US 191; *Richmond Newspapers, Inc. v Virginia,* 448 US 555; *Wood v Georgia,* 370 US 375; *Craig v Harney,* 331 US 367; *Bridges v California,* 314 US 252.) II. Under article I, § 8 of the New York State Constitution, the public and press are presumptively entitled to view trial court proceedings by audiovisual means. (*Richmond Newspapers, Inc. v Virginia,* 448 US 555; *Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430; *Immuno AG. v Moor-Jankowski,* 77 NY2d 235, 500 US 954; *People ex rel. Arcara v Cloud Books,* 68 NY2d 553; *Bellanca v New York State Liq. Auth.,* 54 NY2d 228, 456 US 1006; *People v Ferber,* 57 NY2d 256; *Matter of Ruben R.,* 219 AD2d 117; *Matter of Johnson Newspaper Corp. v Melino,* 77 NY2d 1; *People v P.J. Video,* 68 NY2d 296.) III. The per se ban in Civil Service Law § 52 is unconstitutional under the First Amendment and the broader protections of New York Constitution, article I, § 8. (*Richmond Newspapers, Inc. v Virginia,* 448 US 555; *Press-Enterprise Co. v Superior Court of Cal., County of Riverside,* 478 US 1; *Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430; *Globe Newspaper Co. v Superior Court, County of Norfolk,* 457 US 596; *Matter of Associated Press v Bell,* 70 NY2d 32; *Chandler v*

*Florida,* 449 US 560; *Matter of Oliver v Postel,* 30 NY2d 171; *Nebraska Press Assn. v Stuart,* 427 US 539; *Stroble v California,* 343 US 181; *Waller v Georgia,* 467 US 39.)

*Eliot Spitzer, Attorney General,* New York City (*Caitlin Halligan* and *Gregory Silbert* of counsel), for State of New York and others, respondents. I. There is no First Amendment right to televise trial proceedings. (*Estes v Texas,* 381 US 532; *Chandler v Florida,* 449 US 560; *Richmond Newspapers, Inc. v Virginia,* 448 US 555; *Nixon v Warner Communications, Inc.,* 435 US 589; *Waller v Georgia,* 467 US 39; *Press-Enterprise Co. v Superior Court of Cal., County of Riverside,* 478 US 1; *New State Ice Co. v Liebmann,* 285 US 262; *Globe Newspaper Co. v Superior Court, County of Norfolk,* 457 US 596; *Press-Enterprise Co. v Superior Court of Cal., Riverside Cty.,* 464 US 501; *United States v Yonkers Bd. of Educ.,* 747 F2d 111.) II. There is no state constitutional right to televise trial proceedings. (*Richmond Newspapers, Inc. v Virginia,* 448 US 555; *Matter of United Press Assns. v Valente,* 308 NY 71; *Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430; *People ex rel. Arcara v Cloud Books,* 68 NY2d 553; *Matter of Johnson Newspaper Corp. v Melino,* 77 NY2d 1; *McGowan v Burstein,* 71 NY2d 729; *People v P.J. Video,* 68 NY2d 296; *SHAD Alliance v Smith Haven Mall,* 66 NY2d 496; *Matter of Santiago v Bristol,* 273 AD2d 813.) III. Section 52 of the Civil Rights Law passes constitutional muster. (*Perry Educ. Assn. v Perry Local Educators' Assn.,* 460 US 37; *Cornelius v NAACP Legal Defense & Ed. Fund, Inc.,* 473 US 788; *Huminski v Corsones,* 396 F3d 53; *United States v Grace,* 461 US 171; *Richmond Newspapers, Inc. v Virginia,* 448 US 555; *Estes v Texas,* 381 US 532; *Globe Newspapers v Superior Court, Norfolk County,* 457 US 596; *Heffron v International Socy. for Krishna Consciousness, Inc.,* 452 US 640; *Chandler v Florida,* 449 US 560; *Westmoreland v Columbia Broadcasting Sys., Inc.,* 752 F2d 16.)

*Michael A. Cardozo, Corporation Counsel,* New York City (*Janet L. Zaleon, Kristin M. Helmers* and *Jane R. Goldberg* of counsel), for Robert Morgenthau, respondent. The dismissal of plaintiff Courtroom Television Network LLC's (Court TV) complaint against the District Attorney of New York County should be affirmed for the reasons given by the Appellate Division and, moreover, because Court TV has no justiciable controversy against the District Attorney. Court TV failed to show that it has been threatened with prosecution for televising court proceedings. (*Fox Wander W. Neighborhood Assn. v Luther*

*Forest Community Assn.,* 178 AD2d 871; *Parochial Bus Sys. v Board of Educ. of City of N.Y.,* 60 NY2d 539; *Cherry v Koch,* 126 AD2d 346, 70 NY2d 603; *Lang v Hanover Ins. Co.,* 3 NY3d 350; *Bolt Assoc. v Diamonds-In-The-Roth, Inc.,* 119 AD2d 524; *James v Alderton Dock Yards,* 256 NY 298; *People v Zimmer,* 51 NY2d 390; *People v Di Falco,* 44 NY2d 482; *People v Eboli,* 34 NY2d 281.)

*Mickey H. Osterreicher,* Buffalo, and *Covington & Burling,* Washington, D.C. (*Timothy L. Jucovy* of counsel), for National Press Photographers Association and others, amici curiae. I. Cameras in the courtroom are necessary to maintain the public's historic right of access to the courts. (*Richmond Newspapers, Inc. v Virginia,* 448 US 555; *ABC, Inc. v Stewart,* 360 F3d 90; *Press-Enterprise Co. v Superior Court of Cal., Riverside Cty.,* 464 US 501.) II. Due to significant technological advances in the field of audiovisual coverage since 1952, a video camera's physical and psychological presence in the courtroom is unobtrusive. (*Ward v Rock Against Racism,* 491 US 781; *Estes v Texas,* 381 US 532; *ABC, Inc. v Stewart,* 360 F3d 90; *Katzman v Victoria's Secret Catalogue,* 923 F Supp 580; *Members of City Council of City of Los Angeles v Taxpayers for Vincent,* 466 US 789; *Simon & Schuster, Inc. v Members of N.Y. State Crime Victims Bd.,* 502 US 105; *Richmond Newspapers, Inc. v Virginia,* 448 US 555; *National Assn. for Advancement of Colored People v Button,* 371 US 415.)

*Chadbourne & Parke LLP,* New York City (*Thomas E. Riley, Philip Pfeffer* and *Jennifer Wilson* of counsel), for New York State Association of Criminal Defense Lawyers, amicus curiae. I. The Appellate Division properly affirmed the Supreme Court's decision upholding Civil Rights Law § 52. II. Under the content-neutral standard of review, this Court should consider the impact of cameras in the courtroom on the trial participants. (*Estes v Texas,* 381 US 532; *People v Rosario,* 9 NY2d 286, 368 US 866.) III. The Court should consider the negative impact of programming choices like Courtroom Television Network LLC's. (*Estes v Texas,* 381 US 532.)

*Richard Sexton,* New York City, amicus curiae. I. The Supreme Court in *Estes v Texas* (381 US 532 [1965]) had fundamental concerns about the televising of court proceedings for transmission to remote mass audiences and its impact on the fairness of trials, the rights of participants in the proceedings and the integrity of the judicial process, and such concerns still apply

today. (*Chandler v Florida,* 449 US 560.) II. In enacting section 52 of the Civil Rights Law, the Legislature had fundamental concerns about the televising of court proceedings for transmission to remote mass audiences and its impact on the fairness of trials, the rights of participants in the proceedings and the integrity of the judicial process, and the reasonableness of such concerns still applies today and militates against the claim of a new constitutional right of television access under New York Constitution, article I, § 8. (*Estes v Texas,* 381 US 532.)

*Kenneth G. Standard,* Albany, *Slade R. Metcalf, Kevin W. Goering, Edward J. Klaris* and *Aimee E. Saginaw* for New York State Bar Association, amicus curiae. I. The New York State Bar Association supports cameras in the courts. (*Littlejohn v Bic Corp.,* 851 F2d 673.) II. The New York State Bar Association conducted extensive fact-gathering before supporting cameras in courts. III. Jurisprudence supports allowing television access to New York courts. (*Richmond Newspapers, Inc. v Virginia,* 448 US 555; *Matter of Raab,* 100 NY2d 305.)

*Jonathan E. Gradess,* Albany, and *Stephanie J. Batcheller* for New York State Defenders Association, amicus curiae. Civil Rights Law § 52, prohibiting television cameras in court proceedings, is constitutionally supported by the demands of due process and fair and independent administration of justice. (*Estes v Texas,* 381 US 532; *Sheppard v Maxwell,* 384 US 333; *Chandler v Florida,* 449 US 560; *Westmoreland v Columbia Broadcasting Sys., Inc.,* 752 F2d 16; *Nixon v Warner Communications, Inc.,* 435 US 589; *People v Walker,* 81 NY2d 661; *People v Davis,* 43 NY2d 17; *United States v Salerno,* 481 US 739; *People v Tichenor,* 89 NY2d 769.)

*McNamee, Lochner, Titus & Williams, P.C.,* Albany (*Michael J. Grygiel* and *Morgan A. Costello* of counsel), for Clear Channel Communications, Inc., amicus curiae. I. This appeal implicates fundamental legal—not policy—issues which should be determined as a matter of state constitutional law. (*Alliance of Am. Insurers v Chu,* 77 NY2d 573; *Matter of Wood v Irving,* 85 NY2d 238; *Marbury v Madison,* 1 Cranch [5 US] 137; *People v LaValle,* 3 NY3d 88; *Landmark Communications, Inc. v Virginia,* 435 US 829; *SHAD Alliance v Smith Haven Mall,* 66 NY2d 496; *McRae v Califano,* 491 F Supp 630; *Schieffelin v Komfort,* 212 NY 520; *Boryszewski v Brydges,* 37 NY2d 361; *Richmond Newspapers, Inc. v Virginia,* 448 US 555.) II. A mandatory, absolute ban on audiovisual coverage of in-court proceedings

abridges the rights of the press and public protected under article I, § 8 of the New York State Constitution. (*Richmond Newspapers, Inc. v Virginia,* 448 US 555; *Globe Newspaper Co. v Superior Court, County of Norfolk,* 457 US 596; *People v Harris,* 57 NY2d 335, 460 US 1047; *Matter of Associated Press v Bell,* 70 NY2d 32; *Matter of New York Times Co. v Demakos,* 137 AD2d 247; *Coopersmith v Gold,* 156 Misc 2d 594; *O'Neill v Oakgrove Constr.,* 71 NY2d 521; *Matter of Beach v Shanley,* 62 NY2d 241; *Matter of Westchester Rockland Newspapers v Leggett,* 48 NY2d 430; *Press-Enterprise Co. v Superior Court of Cal., Riverside Cty.,* 464 US 501.)

*Patterson, Belknap, Webb & Tyler LLP,* New York City (*Saul B. Shapiro* of counsel), for ABC, Inc. and others, amici curiae. I. As courts anticipated, courtroom camera technology has advanced and the public has embraced television. (*Estes v Texas,* 381 US 532; *Westmoreland v Columbia Broadcasting Sys., Inc.,* 752 F2d 16; *Cable News Network, Inc. v American Broadcasting Cos., Inc.,* 518 F Supp 1238; *Katzman v Victoria's Secret Catalogue,* 923 F Supp 580; *People v Boss,* 182 Misc 2d 700.) II. Constitutional jurisprudence adapts with the progress of technology. (*Olmstead v United States,* 277 US 438; *Kyllo v United States,* 533 US 27; *Denver Area Educ. Telecom. Consortium, Inc. v Federal Communications Commn.,* 518 US 727; *Red Lion Broadcasting Co. v Federal Communications Commn.,* 395 US 367; *Federal Communications Commn. v Pacifica Found.,* 438 US 726; *Joseph Burstyn, Inc. v Wilson,* 343 US 495; *Columbia Broadcasting System, Inc. v Democratic National Committee,* 412 US 94; *Turner Broadcasting Sys., Inc. v Federal Communications Commn.,* 512 US 622; *United States v Playboy Entertainment Group, Inc.,* 529 US 803; *Sable Communications of Cal., Inc. v Federal Communications Commn.,* 492 US 115.) III. New York's ban on courtroom cameras violates the constitutional presumption that courtrooms are open to the public and press. (*Matter of Beach v Shanley,* 62 NY2d 241; *O'Neill v Oakgrove Constr.,* 71 NY2d 521; *Matter of United Press Assns. v Valente,* 308 NY 71; *Richmond Newspapers, Inc. v Virginia,* 448 US 555; *People ex rel. Arcara v Cloud Books,* 68 NY2d 553; *People v Boss,* 182 Misc 2d 700; *Katzman v Victoria's Secret Catalogue,* 923 F Supp 580; *Blanco v American Tel. & Tel. Co.,* 90 NY2d 757; *People v Bialostok,* 80 NY2d 738; *Press-Enterprise Co. v Superior Court of Cal., Riverside Cty.,* 464 US 501.)

## OPINION OF THE COURT

G.B. SMITH, J.

The primary issue on this appeal is whether Civil Rights Law

§ 52, which bans audiovisual coverage of most courtroom proceedings,[1] violates the Federal or State Constitution. We agree with the Supreme Court and the Appellate Division that there is no First Amendment or New York Constitution, article I, § 8 right to televise a trial.

On September 5, 2001, Courtroom Television Network LLC (Court TV) filed a complaint against the State and Robert Morgenthau in his official capacity as District Attorney of New York County seeking a declaratory judgment that Civil Rights Law § 52 is unconstitutional and enjoining the prosecutor's office from enforcing it.[2] On July 15, 2003, Supreme Court granted summary judgment to defendants stating:

> "the court declines to establish a constitutional rule
> in New York granting the media a right to televise
> court proceedings. The record is consistent with the
> traditional approach of New York courts to public
> access questions, giving great weight to fair trial
> concerns. The record also is consistent with New
> York's statutory scheme which guarantees public
> trials, but gives primacy to fair trial rights. More-
> over, to the extent any changes to the statutory
> scheme have been put into experimental use, these
> were initiated and reviewed by the Legislature. A
> state constitutional rule expanding the rights of the
> media in New York to include the right to photo-
> graph and broadcast court proceedings would derail
> what is, and always has been, a legislative process."
> (1 Misc 3d 328, 375 [2003].)

The Appellate Division affirmed. Court TV appeals as of right on constitutional grounds pursuant to CPLR 5601 (b) (1).

Court TV asserts that section 52 denies it the right of access to trials guaranteed by the First Amendment to the United States Constitution and article I, § 8 of the New York State Constitution. Court TV argues further that most states permit televised trials, that New York stands alone in having an

---

**1.** Civil Rights Law § 52 provides in part: "No person, firm, association or corporation shall televise, broadcast, take motion pictures or arrange for the televising, broadcasting, or taking of motion pictures within this state of proceedings, in which the testimony of witnesses by subpoena or other compulsory process is or may be taken, conducted by a court, commission, committee, administrative agency or other tribunal in this state . . . ."

**2.** Since there is no pending action by the District Attorney of New York County against Court TV, there is no justiciable issue before us, and the case against the District Attorney should be dismissed.

"absolute ban" on televised trials and that the evidence supporting access to information for the general public far outweighs any attendant problems of having cameras in the courtroom. New York State counters that there is no First Amendment right to televised trials, and that the concerns of Court TV are more appropriately directed to the Legislature than to the courts. The State additionally argues that allowing cameras in the courtroom is a discretionary policy determination that may be made by the Legislature.

I. First Amendment

The First Amendment to the United States Constitution guarantees the press and the public a right of access to trial proceedings. Without the right to attend trials, "which people have exercised for centuries, important aspects of freedom of speech and 'of the press could be eviscerated'" (*Richmond Newspapers, Inc. v Virginia*, 448 US 555, 580 [1980]; *see also Globe Newspaper Co. v Superior Court, County of Norfolk*, 457 US 596, 605 [1982]; *Press-Enterprise Co. v Superior Court of Cal., Riverside Cty.*, 464 US 501, 510 [1984] [*Press Enterprise I*]; *Press-Enterprise Co. v Superior Court of Cal., County of Riverside*, 478 US 1, 9 [1986] [*Press Enterprise II*]).

Though the public acquires information about trials chiefly through the press and electronic media, the press is not imbued with any special right of access. Rather, the media possesses "the same right of access as the public . . . so that they may report what people in attendance have seen and heard" (*Richmond Newspapers*, 448 US at 573). Thus, the press has "no right to information about a trial superior to that of the general public" (*Nixon v Warner Communications, Inc.*, 435 US 589, 609 [1978]), nor any right to information greater than the public (*see Houchins v KQED, Inc.*, 438 US 1, 15 [1978]).

Civil Rights Law § 52 does not prevent the press, including television journalists, from attending trials and reporting on the proceedings. What they cannot do under the statute is bring cameras into the courtroom. This is not a restriction on the openness of court proceedings but rather on what means can be used in order to gather news. The media's access is thus guaranteed. But it does not extend to a right to televise those proceedings (*Westmoreland v Columbia Broadcasting Sys., Inc.*, 752 F2d 16, 23 [2d Cir 1984]). "There is a long leap . . . between a public right under the First Amendment to attend trials and a public right under the First Amendment to see a given trial televised" (*id.*).

*Estes v Texas* (381 US 532 [1965]) is the seminal case on televising a trial. Five Justices concurred in the Court's holding that the petitioner had been denied due process because of the televising and broadcasting of his trial and held there was no constitutional right of the press to have access to the courtroom during a trial. The Court listed a number of concerns about the presence of cameras at the trial, including the prejudicial impact of pretrial publicity on the jurors, the impact on the truthfulness of the witnesses, responsibilities placed on the trial judge to assure a fair trial and the impact on the petitioner. The Court wrote, "A defendant on trial for a specific crime is entitled to his day in court, not in a stadium, or a city or nationwide arena" (381 US at 549; *see also Sheppard v Maxwell*, 384 US 333, 355 [1966]). The Court did acknowledge that "the ever-advancing techniques of public communication and the adjustment of the public to its presence may bring about a change in the effect of telecasting upon the fairness of criminal trials" (381 US at 551-552).

Today, television has become a "commonplace . . . affair in the daily life of the average person" (*id.* at 595 [Harlan, J., concurring]). While the Supreme Court has revisited the effects of televised coverage of trials, concluding that such broadcasts are not a per se violation of fair trial rights, it has never deviated from its holding that " 'there is no constitutional right to have [live witness] testimony recorded and broadcast' " (*Chandler v Florida*, 449 US 560, 569 [1981], quoting *Nixon v Warner Communications, Inc.*, 435 US 589, 610 [1978]).[3]

---

**3.** We note that after *Chandler*, no Federal Circuit Court has opined that the Federal Constitution guarantees the media a right to televise trials (*see e.g. Westmoreland v Columbia Broadcasting Sys., Inc.*, 752 F2d 16, 24 [1984]; *Whiteland Woods, L.P. v Township of W. Whiteland*, 193 F3d 177, 181 [3d Cir 1999] [press has no absolute right of access to a criminal trial]; *United States v Edwards*, 785 F2d 1293, 1295 [5th Cir 1986] [First Amendment does not guarantee a positive right to televise or broadcast criminal trials]; *Conway v United States*, 852 F2d 187, 188-189 [6th Cir 1988] [no First Amendment right to televise judicial proceedings]; *United States v Kerley*, 753 F2d 617, 621 [7th Cir 1985] ["exclusion of cameras from federal courtrooms is constitutional"]; *Rice v Kempker*, 374 F3d 675, 678 [8th Cir 2004] ["the First Amendment does not protect the use of video cameras or any other cameras or, for that matter, audio recorders in the execution chamber"]; *California First Amendment Coalition v Woodford*, 299 F3d 868, 877 [9th Cir 2002] [reaffirms First Amendment right of access to attend executions]; *Combined Communications Corp. v Finesilver*, 672 F2d 818, 821 [10th Cir 1982] ["The First Amendment does not guarantee the media a constitutional right to televise inside a courthouse"]; *United States v Hastings*, 695 F2d 1278, 1280 [11th Cir 1983] [right of access does not extend

Thus, it is clear that the Federal Constitution does not require courtrooms to be open to televise court proceedings.

## II. The New York State Constitution

The New York State Constitution, similarly, does not provide a right to televise trials. Article I, § 8 states, "Every citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press." Court TV argues that Civil Rights Law § 52 is an unlawful "restraint on the press." It concedes, however, that this Court has not "explicitly" recognized "a state constitutional right to public and press access to trial court proceedings." While we have in certain circumstances interpreted article I, § 8 more broadly than its federal counterpart (*see O'Neill v Oakgrove Constr.*, 71 NY2d 521, 530-532 [1988] [then Judge Kaye concurring]), we decline to do so here.

In New York, the press, like the public, has a right of access to criminal proceedings (*see Matter of Westchester Rockland Newspapers v Leggett*, 48 NY2d 430, 437-438 [1979]; *Matter of Gannett Co. v De Pasquale*, 43 NY2d 370, 376 [1977]; *Matter of Associated Press v Bell*, 70 NY2d 32, 38 [1987]). This includes access to pretrial hearings (*id.* ["We conclude, therefore, that the public and the press may have a First Amendment right of access to pretrial suppression hearings"]). Any exception to a public trial should be narrowly construed (*Westchester Rockland Newspapers v Leggett*, 48 NY2d at 443; *People v Hinton*, 31 NY2d 71, 75-76 [1972] ["While we reaffirm today the inherent discretionary power of the trial court to close the courtroom, we need only point out that the discretion be sparingly exercised and then, only when unusual circumstances necessitate it" (citation omitted)]).

Court TV relies on courtroom closure cases to suggest that New York has granted the press broader rights than those provided under the First Amendment. But even if the right to access was the equivalent of a right to televise courtroom proceedings, which it is not, our cases do not support appellant's assertions.

Even prior to *Estes*, New York did not recognize any independent right of the press beyond that of the public to have access to the court. In *Matter of United Press Assns. v Valente* (308 NY

---

to "the right to televise, photograph, record, and broadcast federal criminal trials"]).

71, 84-85 [1954]), this Court held that the press had no independent right to request that the courtroom remain open separate from defendant's right to make either a request for the court to remain open or closed. In fact, our approach to courtroom closure has been comparable to the federal analysis. In imposing such a restraint on the press, the government must show that there is a legitimate governmental interest which outweighs any constitutional right of access by the press and public (see *New York Times Co. v United States*, 403 US 713, 715 [1971] [Black, J., concurring] [government has the burden of proving that governmental interest outweighs the constitutional right]).

The primary governmental interest, both state and federal, is guaranteeing that the defendant receives a fair trial (see *Estes v Texas, supra*; *Westchester Rockland Newspapers v Leggett, supra*). Consistent with that interest, the court must be concerned with the defendant, jurors, witnesses, attorneys and the public at large (see *Waller v Georgia*, 467 US 39, 45-46 [1984]; *People v Ramos*, 90 NY2d 490, 497-498 [1997]).

In *Westchester Rockland Newspapers v Leggett*, this Court stated, "All court proceedings are presumptively open to the public, but when this would jeopardize the right of the accused to a fair trial, the competing interests must be balanced and reconciled as far as possible" (48 NY2d 430, 438 [1979], *supra*). The governmental interests of the right of a defendant to have a fair trial and for the trial court to maintain the integrity of the courtroom outweigh any absolute First Amendment or article I, § 8 right of the press or the public to have access to trials.

This Court has clearly and unequivocally held that the state constitutional right of the press to attend a trial is the same as that of any citizen. "The fact that petitioners are in the business of disseminating news gives them no special right or privilege, not possessed by other members of the public. Since the only rights they assert are those supposedly given 'every citizen' to attend court sessions (Judiciary Law, § 4[4]), they are in no position to claim any right or privilege not common to 'every

---

4. Judiciary Law § 4:

"Sittings of courts to be public

"The sittings of every court within this state shall be public, and every citizen may freely attend the same, except that in all proceedings and trials in cases for divorce, seduction, abortion, rape, assault with intent to commit rape, criminal sexual act, bastardy or filiation, the court may, in its discretion,

[other] citizen' " (see *Matter of United Press Assns. v Valente,* 308 NY 71, 85 [1954]). The *Valente* court held that the press had no independent right to request that the courtroom remain open separate from defendant's right to make either a request for the court to remain open or closed. Thus, under New York State law the press has no right separate from the public to challenge the judge's order to close the courtroom.

In *Matter of Johnson Newspaper Corp. v Melino* (77 NY2d 1, 8 [1990]), this Court held that there is no broader protection for the press under State Constitution, article I, § 8, than under the United States Constitution with respect to right of access to judicial proceedings. Even though *Johnson* specifically addressed disciplinary proceedings which are traditionally closed, and Court TV petitions this Court for a ruling on trials which are presumptively open, *Johnson* does guide this Court in that it addressed whether or not article I, § 8 gives greater rights than the First Amendment. *Johnson* also refused to find that there was a greater protection for the press than for the public to have access to the court.

Together, *Valente* and *Johnson* hold that there is no additional or broader protection under State Constitution, article I, § 8, than under the First Amendment insofar as access to court proceedings is concerned.[5] Thus, we conclude that Civil Rights Law § 52 withstands state constitutional challenge.

III. The Legislative Prerogative

In New York State, the decision whether or not to permit cameras in the courtroom is a legislative prerogative. The Legislature may and has, under our State Constitution, experimented with rules regarding audiovisual broadcasts of trial proceedings.

Beginning in 1987 with the enactment of Judiciary Law § 218, the Legislature has on four occasions temporarily permitted

---

exclude therefrom all persons who are not directly interested therein, excepting jurors, witnesses, and officers of the court."

5. Because we conclude that Civil Rights Law § 52 does not affect a federal or state constitutional right, we need not consider Court TV's argument that the State's law should be analyzed under a strict scrutiny standard. Even if we were to consider section 52 under a constitutional lens, however, it would pass constitutional muster. This Court concludes that the statute is narrowly tailored to serve the governmental interests at issue, namely insuring that criminal defendants receive fair trials (see *Sheppard v Maxwell, supra*), that witnesses are forthcoming in their testimony (see *People v Hinton, supra*), that the trial court has control of the courtroom and that the integrity of the trial is maintained (see *People v Ramos*, 90 NY2d at.504).

certain courtroom broadcasts. Specifically, Judiciary Law § 218 (1) permitted the Chief Judge of the State to "authorize an experimental program in which presiding trial judges, in their discretion, may permit audio-visual coverage of civil and criminal court proceedings, including trials" subject to certain conditions and restrictions.[6] Judiciary Law § 218 contained sunset provisions upon which the statute, if not extended, would automatically expire. It also required a committee to review audiovisual coverage to hold public hearings on audiovisual coverage and to issue reports "evaluating the efficacy of the program [of audiovisual coverage] and whether any public benefits accrue from the program, [and] any abuses that occurred during the program," with recommendations for future legislation (Judiciary Law § 218 [9] [c], as amended by L 1995, ch 8). After each experiment, lasting approximately two to three years, the Legislature reviewed the findings and reports on audiovisual equipment in the courtroom, all of which recommended cameras in the courtroom, and, after each review, rejected the recommendation. On June 30, 1997, the Legislature and Governor allowed Judiciary Law § 218 to sunset. Thus, the ban on televised trials contained in Civil Rights Law § 52 resumed as of July 1, 1997, a ban which continues to the present. Despite the technological improvements to audiovisual equipment, which renders its presence in courtrooms less obtrusive, the Legislature has not seen fit since 1997 to amend section 52 or reenact section 218.

We will not circumscribe the authority constitutionally delegated to the Legislature to determine whether audiovisual coverage of courtroom proceedings is in the best interest of the citizens of this state. "A state constitutional rule expanding the rights of the media in New York to include the right to photograph and broadcast court proceedings would derail what is, and always has been, a legislative process" (1 Misc 3d 328, 375 [2003], *supra*).

For all of the foregoing reasons, we hold that Civil Rights Law § 52 is constitutional under both the First Amendment to the United States Constitution and article I, § 8 of the New York State Constitution.

---

**6.** When Judiciary Law § 218 was in effect, the court system itself exercised control over the means of access to proceedings made available to broadcast media under Rules of the Chief Administrator of the Courts (22 NYCRR) part 131.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed, with costs.