People v Armeli (2024 NY Slip Op 51404(U))

[*1]

People v Armeli

2024 NY Slip Op 51404(U)

Decided on October 8, 2024

Justice Court Of The Town Of Orchard Park, Erie County

Pastrick, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 8, 2024
Justice Court of the Town of Orchard Park, Erie County

The People of the State of New York,

against
Christopher R. Armeli, Defendant. NATIONAL CENTERS FOR ADVOCACY AND JUSTICE 
 and TREVOR M. DARLING, Proposed intervenors.

Docket No. 23090240

Nathan Zobrest, Esq.
Erie County District Attorney's Office
25 Delaware Avenue
Buffalo, New York 14202

For defendant:
Kevin R. Shelby, Esq.
5662 Main Street
Williamsville, New York 14221

Michael J. Pastrick, J.

By accusatory instrument sworn September 29, 2023, defendant was charged with one count of aggravated harassment in the second degree (Penal Law § 240.30 [2]) relative to an episode in which he allegedly telephoned the Orchard Park Police Department repeatedly and without legitimate reason over a period of several hours. Now, by application received August 20, 2024, the "National Centers for Advocacy and Justice" (NCAJ), a self-described non-profit organization of which defendant is executive director, seeks permission to videotape and privately audiotape what this court understands to be the nonjury trial in this matter for the purpose of later broadcast and publication. Through the same application, the NCAJ also seeks permission to capture and use still photography of that nonjury trial for subsequent publication.[FN1]

According to its director—who submitted an unsworn written statement in support of the application—the NCAJ is, among other things, "an organization that promotes and advocates for Civil Rights." The videotaping and private audiotaping sought by those intervenors in this proceeding, however, would violate Civil Rights Law § 52. Consequently, this court lacks discretion to grant the request for leave to videotape and privately audiotape what it understands to be the nonjury trial in this matter, and that part of the application is denied (see id.; cf. 22 NYCRR 131.1 [b] with 22 NYCRR 131.2 [b]).[FN2]

The court is vested with the discretion to grant the part of the application seeking permission to "tak[e] . . . still pictures" (22 NYCRR 131.2 [b]; cf. former Judiciary Law § 218 [1]; People v Kopp, 195 Misc 2d 475, 481-482 [Erie County Court 2003]) of the nonjury trial in this matter. However, for the reasons that follow, and following consideration of the factors enumerated in the now-expired (see former Judiciary Law § 218 [11]) but still informative former Judiciary Law § 218 (3) (c), that request is denied. I.
"[C]riminal trials [have] long been presumptively open" (Richmond Newspapers, Inc. v Virginia, 448 US 555, 569 [1980]). That openness "has [historically] been recognized as an indispensable attribute of an [American] trial" (id.), perhaps because, "without a public right of access[,] important aspects of freedom of speech and of the press could be eviscerated" (Matter of Associated Press v Bell, 70 NY2d 32, 37 [1987] [internal quotation marks omitted]; see Richmond Newspapers, 448 US at 580). Consequently, "implicit in the First Amendment" to the federal constitution is the right of "the public and the press . . . of access to criminal trials" (Associated Press, 70 NY2d at 37 [emphasis added]; see Richmond Newspapers, 448 US at 580; see also Courtroom Tel. Network LLC v State of New York, 5 NY3d 222, 231 [2005]). And, implicit in the general preference for and right to openness of criminal proceedings (see Associated Press, 70 NY2d at 37-38) is the point that "the appearance of justice can best be provided by allowing people to observe it" (Richmond Newspapers, 448 US at 569 [emphasis added]).[FN3]

The "right of access is not, however, absolute" (Associated Press, 70 NY2d at 38) and does not extend to the freedom to broadcast at trial. For example, "there are circumstances where the right . . . to a fair trial might be inhibited or undermined by unrestricted publicity" (id.). Indeed, the "news media"—to the extent the applicants fall within the penumbra of that [*2]term (see 22 NYCRR 131.2 [c]; see also former Judiciary Law § 218 [2] [c])[FN4]
—"possesses the same right of access as the public . . . so that [it] may report what people in attendance have seen and heard," but "has no right to information about a trial superior to that of[, or greater than,] the general public" (Courtroom Tel. Network LLC, 5 NY3d at 231 [internal quotation marks omitted]). 
To that end, while "[t]he [news] media's access [to a criminal proceeding] is [assured]," "it does not extend to a right to televise," or to record, "those proceedings" (id. at 229 [emphases added]). "There is a long leap . . . between a public right under the First Amendment to attend trials and a public right under the First Amendment to see a given trial televised," to privately record that trial, or to otherwise hear that proceeding broadcast (id.). And, while television, social media, and web streaming are " 'commonplace . . . in the daily life of the average person' " (id. at 230, quoting Estes v Texas, 381 US 532, 595 [1965] [Harlan, J., concurring]), there is no constitutional guarantee that a defendant, an intervenor, or the news media may record or broadcast trial testimony (see Courtroom Tel. Network, 5 NY3d at 230 [internal quotation marks omitted]; see id. at 231).[FN5]

II.
This court's attention now turns from relevant constitutional principles to the part of the application seeking permission to videotape and privately audiotape the nonjury trial in this matter for the purpose of later broadcast and publication. At issue here is "Civil Rights Law § 52, which bans audiovisual coverage of most courtroom proceedings" (Courtroom Tel. Network, 5 NY3d at 228). That statute provides, in relevant part, that "[n]o person, firm association or corporation shall televise, broadcast, take motion pictures, or arrange for the televising, [*3]broadcasting, or taking of motion pictures within this state of [any court] proceedings, in which the testimony of witnesses by subpoena or other compulsory process is or may be taken" (Civil Rights Law § 52).
Here, to the court's understanding, the People intend to take the testimony of two witnesses who either are or will be compelled to appear pursuant to a subpoena. And, even if it misunderstands that point, the court notes that the current posture of this matter is such that "testimony . . . by subpoena or other compulsory process may be taken" (id. [emphasis added]). Consequently, this court lacks discretion to grant the request for leave to videotape and privately audiotape what it understands to be the nonjury trial in this matter, and that part of the application is denied (see id.; cf. 22 NYCRR 131.1 [b] with 22 NYCRR 131.2 [b]). 

III.
Finally, the court's attention turns to the part of the application seeking permission to capture and use still photography of the nonjury trial for subsequent publication. 
Intervenors principally seek permission "to record the trial for public disclosure" and do not amplify their request to "[u]se still photography for later publication." Intervenors explain only that they "wish to pursue recording" to "make the public aware of the rights that have been infringed in this case." The court notes that the question whether "rights" have been so "infringed" does not appear to be at issue in this criminal proceeding and is likely best addressed in a different matter brought in a different forum. 
In any event, among the court's concerns in this matter—and in every matter of this nature (see Courtroom Tel. Network, 5 NY3d at 232)—are maintaining the integrity of the courtroom, protecting from the potential for harm to any participant in this case, and ensuring the fair administration of justice (see former Judiciary Law § 218 [3] [c] [ii]; see generally Courtroom Tel. Network, 5 NY3d at 232). Those considerations militate strongly against a grant of permission to capture and use still photography of the nonjury trial for subsequent publication. The court adds that intervenors have not sought to use potentially less intrusive measures of reporting on these proceedings—such as, for example, exercise of the right of the NCAJ's executive director, in his capacity as defendant, "to employ a stenographer to take minutes of [these] proceedings manually" (22 NCYRR 30.1). Under these circumstances, and for all of those reasons, the court declines to exercise its discretion to permit still photography of the nonjury trial in this matter.

IV.
Accordingly, for all of the foregoing reasons, the instant application for audio/visual coverage of the nonjury trial in this proceeding is denied. 
Dated: October 8, 2024
Hon. Michael J. Pastrick

Footnotes

Footnote 1:This court construes this application as advancing a request to intervene. For the limited purpose of addressing this application, this court grants the NCAJ and its director, Trevor M. Darling, permission to intervene (see CPLR 1013).

Footnote 2:The court notes "that there is no statutory prohibition to audio-visual coverage of a sentencing" (People Ashdown, 12 Misc 3d 836, 837-838 [Sup Ct, Rensselaer County 2006], affd 60 AD3d 1198 [3d Dept 2009]; see Civil Rights Law § 52). If "defendant [is] found guilty after trial or [if] there is no agreement between the people and the defendant as to the proposed sentence of the court" (CPL 380.50 [2] [e]), then this court will permit the NCAJ and its director to either renew this application or to submit a subsequent application for the visual, audio, and still photographic permissions sought here.

Footnote 3:That right of openness, of course, is one that courts of this state facilitate to the extent permitted by law and within parameters established by the chief administrator of the courts (see 22 NYCRR 131.1). 

Footnote 4:For the purpose of this analysis,

"[n]ews media shall mean any news-reporting or news-gathering agency and any employee or agent associated with such agency, including television, radio, radio and television networks, news services, newspapers, magazines, trade papers, in-house publications, professional journals, or any other news-reporting or news-gathering agency, the function of which is to inform the public or some segment thereof" (22 NYCRR 131.2 [c] [emphasis removed]; see People v Reyes, 2024 NY Slip Op 24145, at *2 [Schenectady City Court 2024]).

Footnote 5:The court closes the discussion of this point with two observations.

First, the court notes that the conclusion that there is a right of public access to a courtroom, but not to a broadcast from a courtroom, is rooted in "concerns about the presence of cameras at the trial, including . . . the impact on the truthfulness of witnesses, responsibilities placed on the trial judge to assure a fair trial[,] and the impact on the [defendant]" (Courtroom Tel. Network, 5 NY3d at 230). 

Second, the instant application reflects that defendant is executive director of the NCAJ, and that defendant signed a waiver of confidentiality in furtherance of that request. To the extent that defendant importuned or otherwise catalyzed this application, the court further notes that a " 'defendant on trial for a specific crime is entitled to his [or her] day in court, not in a stadium, or a city or a nationwide arena' " (id. at 230, quoting Estes, 381 US at 549).